KENTUCKY DISTILLERIES & WAREHOUSE CO. v. WATHEN et al.

(Circuit Court, W. D. Kentucky. July 16, 1901.)

Unfair Competition—Preliminary Injunction—Simulation of Brands of Whisky.

Complainant purchased from one of the defendants and his associates a distilling business conducted under the trade-name of "West End Distillery Co.," and also certain valuable brands, for which it paid a large sum, among which were the brands "Ky.'s Criterion" and "Honeymoon." The other defendants, who were sons of the seller, subsequently started a distillery, and placed upon the barrels containing their goods the name "East End Distillery Co.," in connection with which they used the brands "Ky.'s Credential" and "Honeycomb," and also their own names as distillers. Held, that the use of their names was lawful, the name of the distiller being required to be placed upon the package by the internal revenue law, and also that the adoption of the name "East End Distillery Co.," in itself, did not afford a ground of action, but that the use in connection with such names of the brands named was prima facie evidence of an intentional simulation, which entitled

complainant to a preliminary injunction upon the ground of unfair competition.[1]

In Equity. Suit for unfair competition. On motion for preliminary injunction. ·

Moran, Mayer & Meyer and Chas. H. Stoll, for complainant.
Dodd & Dodd and Barnett & Barnett, for defendants.

EVANS, District Judge. If the relief sought by the complainant in this case were based solely upon the ground that it was entitled to the benefits of a trade-mark, I should think that the motion for a temporary injunction ought to be overruled. But, technically speaking, the pending motion does not require us, at present, to view the matter from the standpoint of mere trade-mark law. What aspect the answer of the defendants may put upon the case, we do not, of course, know. The gravamen of the complaint is that the complainant, as purchaser from J. B. Wathen and his then associates, is the. owner of certain very valuable brands of whisky, which cost it a very large sum of money, and that the defendants are unfairly and wrongfully seeking, by the simulation of those brands, to get the benefit of the complainant's property, and the advantage of its large expenditures. The general principles governing such attempts are stated with clearness in many adjudicated cases, but each case at last must depend upon its own peculiar circumstances. In many instances these make the application of general principles quite difficult, and occasionally somewhat unsatisfactory. Owing to certain peculiarities of this case it is not easy to reason out a perfectly logical result. Without going into details, it may give some idea of those difficulties to remember that this case relates to brands upon a class of merchandise which is not sold by the complainant or by either of the defendants otherwise than in barrel lots, and then rarely, if ever, when the barrel and its brands are present for inspection. It is sold almost entirely by "drummers" traveling abroad with samples only, and the retailer of it after its purchase probably always sells it from bottles in no way branded either by the complainant or by the defendants. While, therefore, the brand may be important and valuable, it is not often either seen or noticed at the time of actual sale. The proof is clear and the complainant admits that the wholesale purchaser is never in any wise deceived by the brands which it claims are simulated in this case, and probably most of the defendants' customers are men of that class. The merchandise about which we are now concerned is not, like snuff, or thread, or baking powders, put up in small packages, and exposed to the view and observation of the public who want to buy, and who are very likely to be deceived by artfully contrived imitations. The brands which we are now considering are only put by the parties to this suit upon barrels or other large packages. Besides, there is another circumstance of prime importance growing out of the laws of the United States. Section 3295, Rev. St., as amended by the act of July 16, 1892 (27 Stat. 201), requires that the

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

name of the distiller shall be stamped or burned upon the head of every package of distilled spirits put into bonded warehouses, and this must not be erased until the package is empty. This is information of the most authentic character as to who is the manufacturer of the merchandise, and it must be put on the barrel. There is no option as to this requirement, and, as the distiller's name must be put upon one end of the barrel, I see no reason why it may not be put upon the other, though this latter right should be so exercised by the distiller as not to place his name in arrangement with other words to which another has an exclusive right in such a way as to bring the case within those equitable principles which seek to restrain unfair competition. As will be seen, those words in this case are "Ky.'s Criterion" and "Honeymoon." There is no law, and no contract was shown at the hearing, which forbids R. E. Wathen & Co. from becoming distillers, and when complying with the laws of the United States in that behalf, under which they become distillers, their name must be stamped or burned upon each barrel or other package of their product. There is no reason in the law of the case why that firm might not employ M. A. Wathen as salesman, none why they might not engage the services of J. W. Flood or of J. L. Hackley, all of whom were formerly employés of J. B. Wathen, and none why they might not occupy as their own the office of their father, if the parties interested so chose, though these latter circumstances may, when taken in connection with the other facts, have some bearing upon the quo animo with which certain brands were selected and used by the partnership firm.

The foregoing considerations are among those which have caused me trouble in the consideration of the evidence offered upon the pending motion. How they may strike me after a full defense, and after the evidence is offered in more regular form, and after cross-examination of the witnesses rather than in the shape of affidavits, I cannot say. But as this is a motion only for a temporary restraint upon certain defendants, and as that restraint, if injurious and wrongful, can be compensated in damages which can be secured by a bond, I have concluded to solve the doubts upon two phases of the case in favor of the complainant. I do this upon the following grounds: J. B. Wathen and his associates, if any, had sold certain property to the complainant for a very large sum of money, which was paid to him. The property thus sold included certain brands which had been extremely valuable by him, and for doing which he had been repaid in the price he received. The outlay, therefore, by which this value was given to those brands, was paid ultimately by the complainant. The co-partnership firm of R. E. Wathen & Co., of which, however, J. B. Wathen does not appear to be a member, was made up of his three sons, one of whom, at least, is an infant, and all of whom were without means. They all reside in their father's home, but how they obtained the necessary capital to begin and continue operations does not appear. They obtained all their father's ordinary paraphernalia and outfit not sold to complainant, including his office and most of his traveling force. These matters, separately or combined, even if they did touch the complainant somewhat close, would not, per se, I think,

afford any reason for concluding that there had been in any legal way an injury inflicted upon the complainant, and would have been of no material consequence if the firm had not, in selecting names for their products, also come so close to certain of the complainant's brands. The use of words like "Old Fashion Fire Copper 5th Dis. Ky. Bourbon," or like "The Celebrated Fire Copper 5th Dis. Ky. Bourbon," is too common in the trade to permit them to be the subject of any exclusive appropriation, but the manner of their use, when taken in connection with the words "Honeycomb" and "Ky.'s Credential," and the arrangement of the words on the barrels of the defendants, seem to me to show that there was a manifestly industrious effort to come as close to the words "Honeymoon" and "Ky.'s Criterion" as possible without actually using these words. The fact that defendants R. E. Wathen & Co., in making their brands, take the first and most striking half of the word "Honeymoon," and the abbreviation "Ky.'s," and the two first letters of its accompanying word, "Criterion," seems to me to be very persuasive, and particularly when, in the first instance, the word "Honeycomb" is fixed so close to the words "East End Distillery Co." by the defendants. The law requires the name of every distiller to be branded on the head of the barrel, and there being no law or contract to prohibit R. E. Wathen & Co. from distilling spirits, and thus yielding a revenue to the United States,—the prime object of the internal revenue laws,—there is no reason why these Wathens, as well as J. B. Wathen, may not be distillers, pay revenue, and sell their product. In doing the work of distillers, the law requires that they shall do it under their own names, and that happens also to be Wathen. Hence the word "Wathen" does not and cannot cut as much figure in this case as the word "Garrett" did in the Snuff Case, reported in 24 C. C. A. 173, 78 Fed. 472. The snuff there was known as "Garrett's," while the merchandise here is branded by the complainant as "Honeymoon" and "Ky.'s Criterion." Indeed, the gravamen of the complaint made in the bill is not, and, in view of the internal revenue laws of the United States, could not have been, the use of the name "Wathen," which was not the prominent feature of the brand itself, although it was of the manufacture. The gist of the complaint, as before indicated, is the use by R. E. Wathen & Co. of the words "Ky.'s Credential" in such a way as to simulate the complainant's brand of "Ky.'s Criterion," and in the use of the word "Honeycomb" in such a way as to simulate the complainant's brand of "Honeymoon." All things considered, it seems to me, as this case is now presented, that these two brands of the firm of R. E. Wathen & Co. do unfairly impinge upon the said two brands of the complainant. When the court considers how easily this approximation and imitation might have been avoided by a different arrangement even of the words in the defendants' brands, so as clearly and unmistakably to show even to the most casual observer that the products were not those of the complainant, and especially when we consider how this might have been done by other words equally useful, but which would have left no pretense of ground for complaint, we cannot believe that the similarity was accidental. Evidently it was designed for a purpose, and in this connection the manner of using

the words "Old Fashion Fire Copper" may be somewhat suggestive. There could be no just criticism upon the firm of R. E. Wathen & Co. for making whisky as good or better than that of the complainant; nor for so representing it, even by express comparison and other- wise, to their customers; nor, unless the formula has been made a proprietary one, would there be any reason why R. E. Wathen & Co. might not make their spirits by precisely the same formula as that used by the complainant. There is no proof offered to show that this formula was either secret or proprietary. The sole ground upon which I put my judgment upon the pending motion is that the use of the principal words, viz. "Ky's Credential" and "Honeycomb," in the brands of R. E. Wathen & Co., are intentional simulations of the principal words in the complainant's brands, viz. "Ky.'s Criterion" and "Honeymoon," and in the arrangement and general appearance thereof, in connection with other phases of the brands, there is a great probability of injury to the complainant by the taking to the firm of R. E. Wathen & Co. of some of the value and benefit of the brands which complainant purchased from J. B. Wathen to the knowledge of each of the defendants. This probability of damage to complainant seems to me to be the true basis for relief against unfair competition. It is not so much that the public may be deceived, per se, as that the complainant may be injured. Many affidavits were read on the hearing tending to show that in point of fact there had been no deception in any sale made of R. E. Wathen & Co.'s product, but that, on the contrary, there had always been a clear understand- ing of the exact situation and a sale of the merchandise on its own merits. This might be the case as to the past, but still leave the dan- ger open for the future. Besides, these matters will probably be- come more pertinent to any inquiry that may hereafter come up as to the amount of any actual damages sustained by complainant by anything done by R. E. Wathen & Co. There does not appear to be any complaint that the defendants are using the names of J. B. Wathen or J. B. Wathen & Co. or J. B. Wathen & Bro. or J. B. Wathen & Bro. Co., under all of which J. B. Wathen had made whis- kies before his sale to the complainant. With all these considera- tions still in mind, I have concluded that the trade-name "East End Distillery Co.," alone and of itself, in no way injures or infringes up- on the rights of the complainant respecting its trade-name, known as "West End Distillery Co.," though it does serve as a sort of handle or assistant to the use of the brand "Honeycomb." There is not sufficient resemblance either in sound or appearance between the two to impose upon anybody of ordinary caution and intelligence. It could concern no one who desired to purchase, nor would he be at all likely to inquire, where a mere distillery was located, as an induce- ment at least to purchase, or whether it was in the east or west end of—he knew not where. It is nowhere indicated on the brand or trade-name of complainant that Louisville, one end or the other, is the locus of manufacture, nor can that be material. "West," in the one case, and "east," in the other, is the principal word, and at first sight and at first sound the two are entirely different. It results that the motion for the temporary injunction must be sustained as to the

use of the words "Ky.'s Credential" and "Honeycomb" in the brands of R. E. Wathen & Co., but denied as to all other matters. This will, I am confident, remedy the real injury done complainant, and will make legally harmless the defendants' use of the name "The East End Distillery Co." Used by itself, that name does no legal injury to any right of the complainant. It only harms when put in close connection with the imitative word "Honeycomb." In view of the court's doubts, and as the whole case may be changed upon final hearing, the temporary injunction will not be allowed except upon terms that the complainant give bond, conditioned according to law, with good surety, in the sum of $10,000, and, if there should be any unusual delay in the preparation of the case by the complainant, the defendants will be permitted at any time to move to dissolve the temporary injunction.