## WILLIAM H. KELLER, Inc., v. CHICAGO PNEUMATIC TOOL CO.*

## CHICAGO PNEUMATIC TOOL CO. v. KELLER PNEUMATIC TOOL CO.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1923. Rehearing Denied February 28, 1924.)

Nos. 3250, 3251.

1. Patents ⬗131—Trade-marks and trade-names and unfair competition ⬗70(1)—Patented articles may be copied after 17 years, but unfair competition, if artistic adornments copied.

After expiration of 17 years after granting of patent, there is no reason why a Chinese copy of the article may not be made; but if the article covered by a patent and manufactured by the owner of the patent is provided with a special dress or artistic adornments, that are in no way involved in

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 637, 68 L. Ed. —.

the patent claims, the competitor entering the field at the expiration of the patent may subject himself to the charge of unfair competition, if he adopts the artistic designs or those individual marks with which the users have become familiar, and which they recognize as attributes of the product of the old company.

**2. Trade-marks and trade-names and unfair competition ⬡93(1)—Copy of patented article after expiration does not impose burden of establishing good faith.**

If the structure which the patentee makes pursuant to his patent is an embodiment of the elements of the claims, and contains no artistic or distinguishing marks, but is strictly a utilitarian article, where simplicity of structure and cheapened cost of production are inherent in the combination and constitute its virtue, then the mere fact that a Chinese copy is made does not impose on the maker the burden of establishing his good faith, or the absence of unfair trade methods; the patent having expired.

**3. Trade-marks and trade-names and unfair competition ⬡73(1)—Son held not bound by agreement of father and corporation not to use family name in connection with article.**

A son was not bound by agreement of father and corporation, of which the father was president, not to use his family name in connection with pneumatic tools, though the son was an officer of the corporation making such agreement.

**4. Trade-marks and trade-names and unfair competition ⬡95(1)—Injunction held erroneously allowed as regarded unfair competition.**

Where defendant, after suit brought to enjoin use of name in connection with pneumatic tools and for damages, changed its name and at great expense notified the trade that it was not connected with the plaintiff, but was a competitor, and had such notice stamped on its tools and cartons, the trial court erred in granting an injunction.

**5. Trade-marks and trade-names and unfair competition ⬡86—Plaintiff, suing for damages for unfair competition, held guilty of laches.**

Where defendant had been engaged in business of manufacturing pneumatic tools under certain name for over 7 years when suit was begun, plaintiff was not entitled to recover damages for unfair competition because of laches.

**6. Trade-marks and trade-names and unfair competition ⬡5—When numbers may become trade-mark.**

A number may become a good trade-mark, if its primary adoption be solely to indicate origin, but, if the figures indicate grade or quality only, they may not be the basis for a valid trade-mark.

**7. Trade-marks and trade-names and unfair competition ⬡5—Numbers held not valid trade-marks.**

Trade-marks, "50," "60," "80," "90," were not valid, where it appeared that such figures were used and understood by the trade to indicate certain sizes of tools.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Chicago Pneumatic Tool Company against William H. Keller, Inc., formerly known as the Keller Pneumatic Tool Company. From the decree, both parties appeal. Reversed, with directions to dismiss.

Edw. S. Rogers and Geo. T. Buckingham, both of Chicago, Ill., for appellant.

John R. Cochran, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

EVAN A. EVANS, Circuit Judge. Both parties appealed from the decree entered in a suit brought by the Chicago Pneumatic Tool Company, herein called appellee, against appellant, to enjoin further alleged infringements of certain trade-marks issued by the United States Patent Office, and to enjoin the continuance of certain alleged unfair methods of competition, and to recover damages for past infringements and past unfair trade practices. By the decree most of the relief sought was granted. Four trade-marks, upon which the suit was in part predicated, were, however, held invalid. We quote a part of the decree:

"(4) That a writ of injunction forthwith issue out of this court, perpetually enjoining and prohibiting the defendant, its officers, directors, agents, attorneys, employees, servants, workmen, confederates, successors, and assigns, and each and every of them, as follows:

"(a) From using the name 'Keller,' either alone or in connection with any other word or letter, as the name or part of the name of any pneumantic tools or parts therefor manufactured and sold or offered for sale by the defendant.

"(b) From in any manner using the name 'Keller' in connection with the manufacture or sale of pneumatic tools or parts therefor not manufactured by plaintiff or its predecessors in business, unless in every instance accompanied by clear and definite notice that such tools or parts therefor are not the original 'Keller' pneumatic tools or parts therefor manufactured by the plaintiff and its predecessors in business; such notice when placed upon pneumatic tools or parts therefor or used in advertising or other printed matter relating thereto to be in letters as large and as prominently displayed as the word 'Keller' itself.

"(c) From representing in any manner or by any means whatsoever that tools or parts of tools manufactured by defendant are the original and genuine tools made by the plaintiff or by the plaintiff's predecessors, Julius Keller, Keller Tool Company, and Philadelphia Pneumatic Tool Company.

"(d) From the further manufacture or sale of pneumatic tools or parts therefor of the same design and appearance as those manufactured and sold by the plaintiff herein, or in such resemblance thereto as is calculated to confuse the trade or public, or to deceive them into the belief that such tools or parts of tools are of the manufacture of the plaintiff herein."

"(7) The registered trade-marks for the numerals 50, 60, 80, and 90, declared upon by the plaintiff in its bill, are found invalid, and no relief is granted to the complainant as to those."

The facts are involved and complicated, but their statement has been simplified by virtue of certain conclusions we have reached. Plaintiff is a New Jersey corporation engaged in the business of making and selling pneumatic tools. It has absorbed and purchased various other companies engaged in like business, including the Boyer Machine Company, manufacturer of the so-called "Boyer" tool, the Philadelphia Pneumatic Tool Company, manufacturing what is known as the Keller pneumatic tool, and it purchased (if the contract be valid) the exclusive right to use the name "Keller" as applied to pneumatic tools. At the same time it acquired the Philadelphia Pneumatic Tool Company's assets. It is out of these latter transactions that the present controversy grows.

Julius Keller was an inventor and manufacturer of pneumatic tools, who won an enviable reputation for his products. For some time he operated alone, but later organized, or was interested in' the organization, of the Philadelphia Pneumatic Tool Company, which for a short period was chiefly engaged as the selling agent of Julius Keller, the

manufacturer.     Later Keller increased his interest and became the president of this company, and its business and activities were enlarged. Keller obtained numerous patents upon the tools by him designed, and in 1905 made a contract with appellee, the important parts of which are set forth:

"A.     That for a period of 10 years from the date hereof he will not directly or indirectly, either personally or as agent or employee for another or as officer, agent or employee of any company, engage or become in any way interested in the manufacture or sale of pneumatic or electric tools or appliances or parts thereof, or stone dressing tools or machines, or rock drills or parts, except such as he may make for and sell to the party of the second part at prices hereafter mutually agreed upon.

"B.     That he will not within said period engage in business under the name of the 'Keller Tool Company,' nor under any corporate, firm or trade name that includes the words 'tool,' or 'pneumatic tool,' or any words that would imply that he is engaged in the manufacture or sale of either pneumatic or electric tools, appliances, or parts, or stone dressing tools or machines, or rock drills, or parts.

"II.     The party of the first part hereto hereby assigns, transfers, and sets over to the party of the second part, its successors, assigns, and nominees, the sole and exclusive right to the name 'Keller' as applied to pneumatic and electric tools, appliances, and parts, stone dressing tools and machines, and rock drills and parts, together with all his right, title, and interest in any trademarks and trade or other names, applicable to or heretofore used in connection with pneumatic or electric tools, appliances, or parts, or stone dressing tools or machines, or rock drills or parts, and hereby authorize the party of the second part, its successors, nominees, and assigns, to designate by such name, or names, or trade-marks, any tools, appliances, parts, machines, or drills, manufactured or sold by it, its successors, assigns, or nominees.

"III.     The party of the first part further covenants and agrees that he will not at any time use or permit said names or any of them, or said trade-marks or any of them, to be used as applied to or in connection with pneumatic or electric tools, appliances, or parts, or stone dressing tools, or rock drills, or parts, other than by the party of the second part, its successors, assigns, or nominees."

At the same time the Philadelphia Pneumatic Tool Company sold out to appellee and covenanted:

"All the trade-marks and trade-names now or heretofore used or owned by the Philadelphia Pneumatic Tool Company, with the full power and authority to use the same including the name 'Keller,' as applied to pneumatic and electric tools, appliances, and parts, stone dressing tools, machines, and parts, and rock drills and parts, and does hereby authorize the party of the second part, its successors, nominees, and assigns, to designate by any of said names or trade-marks any tools, appliances, parts, machines, or drills manufactured or sold by said party of the second part, its successors, assigns, nominees, or licensees, hereby agreeing that it will execute, deliver, and do any further documents, assurances, or things which may be necessary or convenient to give to the party of the second part, its successors or assigns, the full beneficial use and enjoyment of and title to said names, trade-names and trade-marks, and of all other property sold, assigned, or conveyed by this instrument."

William H. Keller, a son, the moving spirit and principal officer of appellant, was at the time of this contract a young man 21 years of age, employed by his father, and was a director and vice president of the Philadelphia Pneumatic Tool Company.     He had secured certain patents upon tools or appliances for pneumatic tools, which he assigned to the Chicago Pneumatic Tool Company.     He did not, however, make any agreement such as his father signed, heretofore quot-

ed, nor did he in any way bind himself by the covenants found in the agreement of the Philadelphia Pneumatic Tool Company. Thereafter, and in 1912, Julius Keller again entered the pneumatic tool business at Fond du Lac, Wis., the name of his company being the Keller Pneumatic Tool Company. Thereafter, and in 1915, William Keller became connected with the business, and in 1916 purchased and moved it to Grand Haven, Mich., where it has since been conducted.

The present suit was begun ·in October, 1919, and was tried in June, 1922. In November, 1921, appellant changed its name from Keller Pneumatic Tool Company to William H. Keller, Inc. From 1912 to 1916, the Wisconsin company, operating under the name of Keller Pneumatic Tool Company, controlled by Julius Keller, was making pneumatic tools, and after William H. Keller acquired it the same business was continued and enlarged. It made the pneumatic tools which had been covered by Keller patents, but which patents in most instances had expired prior to the commencement of this suit. The bill does not charge patent infringements and no relief of such character is sought.

At the time the name was changed to William H. Keller, Inc., appellant notified the trade that—

"William H. Keller, Inc., is distinct from and in direct competition with the Chicago Pneumatic Tool Company and has no connection with it or any of its predecessors."

It also caused these same words to be printed upon its tools and expended some $50,000 in thus identifying its products and in notifying the trade that its products were not made by appellee.

While the controversy involves different forms of unfair trade methods, we may for convenience divide the issues into those (a) affecting the trade-marks (the facts governing which will be stated separately in the discussion of this question), and the alleged unfair methods adopted by appellant which it is claimed infringed the agreement giving appellee the exclusive right to the name Keller; (b) the actions of appellant whereby Chinese copies of products covered by expired patent were made; and (c) appellant's use of appellee's tools for decoys with which to secure business. These various questions must be considered, not only in the light of the requested injunction, but to determine whether damages may be recovered.

Because of the agreement with the Philadelphia Pneumatic Tool Company and Julius Keller, did appellee acquire the exclusive right to use the name Keller as applied to pneumatic tools? Upon this issue the authorities are conclusive. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Pope Automatic Merchandising Co. v. McCrum-Howell Co., 191 Fed. 979, 112 C. C. A. 391, 40 L. R. A. (N. S.) 463; Warren Featherbone Co. v. American Featherbone Co. et al., 141 Fed. 513, 72 C. C. A. 571.

[1] The issuance of a valid patent gives to the grantee or his assigns a monopoly for 17 years. At the expiration of this period the bars are lifted. All can make the patented article, and there is no reason why a Chinese copy of such article may not be made, unless by doing so the maker subjects himself to the charge of unfair com-

petition. In other words, if the article covered by a patent and manufactured by the owner of the patent is provided with a special dress or artistic adornments that are in no way involved in any of the patent claims, the competitor entering the field at the expiration of the patent may subject himself to the charge of unfair competition, if, in addition to adopting the combination covered by the patent, he adopts the dress, the artistic designs, or those individual marks with which the users have become familiar, and which they recognize as attributes of the product of the old company.

[2] On the other hand, if the structure which the patentee makes pursuant to his patent is an embodiment of the elements of the claims or a claim therein, and contains no artistic or distinguishing marks, but is strictly a utilitarian article, where simplicity of structure and cheapened cost of production are inherent in the combination and constitute its virtue, then the mere fact that a Chinese copy is made does not impose on the maker the burden of establishing his good faith or the absence of unfair trade methods. In other words, under the Singer Sewing Machine Case and other cases cited, supra, the entry of one manufacturer into the field at the expiration of patent is perfectly legitimate and justifiable and only becomes unjustifiable when in selling its goods it adopted methods which induce, or are reasonably calculated to induce, a customer to purchase the product under the mistaken notion that it is manufactured by another.

In brief, the manufacturer entering the field which his competitor has heretofore monopolized, may, for the purpose of determining the issue of unfair trade, have his business and his alleged unfair trade methods examined from two angles, viz. the viewpoint of the maker or manufacturer of goods; and, second, from the viewpoint of the distributor. As a manufacturer, one has a perfect right to make any article of commerce not covered by a patent monopoly or affected by a lawful trade agreement to which he is a party. As a distributor, however, he must respect those methods of honest and upright dealing which forbid one competitor from adopting practices which are now well understood to be unfair or fraudulent. In the present case there is no claim made that appellant infringed any of appellee's patents. Appellant made pneumatic tools, the manufacture and sale of which was unrestricted by any outstanding patent. It was clearly within its rights, unless its Chinese copy of tools, its advertisements, cartons, and circulars, including its use of the name "Keller," constituted unfair trade methods.

[3] Respecting the name "Keller," nothing appears in the record that would justify us in refusing to *William H*. Keller the right to use that term. He was not a party to the agreement which his father, Julius Keller, signed in 1905, nor was he bound by the covenants of the corporation, the Philadelphia Pneumatic Tool Company. It is very doubtful whether the contract was binding on his father for more than 10 years. But this we need not determine.

The very fact that William Keller executed assignments to patents, and never made any restrictive agreement or covenant such as was signed by his father, or the Philadelphia Pneumatic Tool Company, affords another reason for adherence to the rule announced in these

decisions. But the use of the name "Keller," innocent in and of itself, may, in connection with other evidence, be considered in determining the issue of unfair competition. Its use, standing alone, may be innocent and legitimate, but, when viewed in connection with other transactions, be persuasive evidence of appellant's wrongdoing. Thus considered, it could possibly bear on appellant's motive or intent, or affect the good faith explanation of other actions.

[4] The conduct of appellant in 1920, in changing its name, and in stamping upon its tools and upon cartons, and tagging its shipments of parts, with the printed announcements heretofore set forth, absolve it from any charge that thereafter it was endeavoring to palm off its goods as the goods of appellee. The expenditure of so large a sum ($50,000), to say nothing of the other precautions taken to prevent confusion, relieves it of any complaint of bad faith in its trade transactions after 1921. It follows, therefore, that the injunctional features of the decree (except for possible trade-mark infringements later discussed) cannot be sustained.

But, though appellee avoided any and all question of unfair competition after 1921, it may, if the facts warrant it, still be liable for damages committed and for costs of this suit. Wolf, Sayer & Heller v. U. S. Slicing Machine Co. (C. C. A.) 261 Fed. 195. Its conduct will therefore be reviewed for the purpose of determining the issue of damages.

Respecting its use of the word "Keller," appellant has several good reasons for not responding to appellant in damages. The covenant of Julius Keller and the Philadelphia Pneumatic Tool Company was not binding upon William Keller.

[5] Appellee's laches precludes the recovery of damages. The Keller Pneumatic Tool Company had been engaged in the business of manufacturing pneumatic tools for over 7 years when this suit was begun. During that same period and after the transfer to Grand Haven, Mich., letters passed between appellant and respondent, two of which are herewith set forth.

"Chicago, May 21, 1918.

"Keller Pneumatic Tool Company, Grand Haven, Mich.—Gentlemen: We have your esteemed favor of May 20th, inclosing copy of letter from Root & Vandervoort Engineering Company; also copy of letter that you wrote them. We wish to thank you for your very kind favor in this instance, and we have to-day received the order from these people, and same will have our prompt and careful attention.

"Yours very truly,            Chicago Pneumatic Tool Company,
                              "J. G. Osgood, Vice-President,
                                        "Per R. B. McDougall."

"Chicago, May 21, 1918.

"Mr. Wm. H. Keller, President Keller Pneumatic Tool Company, Grand Haven, Mich.—Dear Sir: At the request of Mr. W. P. Pressinger, vice president, we are pleased to mail you to-day under separate cover a complete set of our bulletins dealing with our standard lines of air compressors; also a complete set of our latest price sheets dealing with these machines. These prices at present carry a discount of 20 per cent. to the user, with a further discount to you for resale of 10 per cent. on our single, stage steam, belt, gas, gasoline, and oil driven machines, and 5 per cent. on our duplex compressors, which are listed in both the bulletins and price sheets referred to above as class 'O.' In the event that you should not care to personally solicit compressor business, we

respectfully request that you refer to us inquiries covering such machines; and in those cases where business results we will gladly allow you commissions corresponding to the resale discounts noted. If this arrangement meets with your approval, we shall be pleased to hear from you to that effect, and meanwhile, if we can supply any further information concerning our compressor products, do not hesitate to so advise.

"Yours very truly,                                              J. L. Dean,
"Manager Compressor Sales Division,"

One cannot knowingly sanction business methods adopted by a rival, much less invite his competitor to engage in a business and later recover damages for the alleged losses to his business by means which he encouraged.

Nor was there any other artifice or practice that would support a finding of unfair competition. We have examined the physical exhibits, the pneumatic tools, and find that, like the ordinary hammer and hand saw, they are all simple and devoid of ornamentation or individual markings. They evidence utility and simplicity—serviceability and low cost of production being evidently the two important factors in their manufacture. Their use was by a limited trade, a skilled trade, wherein difficulty in palming off one manufacturer's goods for another's would be experienced.

There is, it is true, a similarity in the appearance of some of the tools, for example, the riveting hammers; but we also observed equal similarity in the product of other manufacturers, notably that of the Dayton Pneumatic Tool Company. The record is replete with cuts of tools from various concerns, and it is evident that the so-called riveting hammer, as well as the chipping hammer, are all very similar in construction. No useless or ornamental part appears.

Nor do we find that the evidence supports the contention that appellant used appellee's tools for decoys with which to secure business. The evidence on this phase of the case consists of a single instance where appellant, in response to the government's advertisement for bids on riveting hammers, chipping hammers, scaling hammers, holders, etc., submitted certain tools made by appellant. The call for bids designated a chipping hammer of the Keller type and required a sample to accompany the bid. Recognizing, as we do, that appellant had the right to manufacture this hammer, unfair methods were not adopted in submitting a hammer such as was called for by the government, even though not of appellant's manufacture.

[6] Respecting appellee's trade-marks "50," "60," "80," and "90," we agree with the District Judge, who found upon the evidence presented that they were invalid. Counsel for opposing parties apparently agree upon the law and fully accept the rule as announced in Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847, and well stated in 26 R. C. L. 845. There can be no question but what a number may become a good trade-mark, if its primary adoption be solely to indicate origin. On the other hand, if the figures indicate a grade or a quality only, they may not be the basis for a valid trademark. Examining the evidence, then, we find that various companies engaged in manufacturing pneumatic tools use these same figures, and there is testimony that will support a finding that such figures were used by competitors prior to their use by appellee.

· [7] But it also appears that these figures were used and understood by the trade to indicate a certain size tool; for example, a riveting hammer bearing the ·numeral "40" indicated that the stroke of the piston was four inches, while that of a hammer bearing the· number "50" possessed a piston with a five-inch stroke.

It follows, therefore, that the decree must be, and it is hereby, reversed, with directions to dismiss the bill.