## GOODYEAR TIRE & RUBBER CO. v. MARBON CORPORATION et al.

### No. 50.

District Court, D. Delaware.

Nov. 6, 1939.

William Brown Morton and Frank E. Barrows (of Pennie, Davis, Marvin & Edmunds), both of New York City, and E. Ennalls Berl (of Ward & Gray), of Wilmington, Del., for plaintiff.

Max W. Zabel and E. C. Gritzbaugh (of Zabel, Carlson, Gritzbaugh & Wells), both of Chicago, Ill., and Robert H. Richards, Jr. (of Richards, Layton & Finger), of Wilmington, Del., for defendants.

NIELDS, District Judge.

This is a suit by plaintiff seeking an injunction restraining the defendants from competing with plaintiff in the manufacture and sale of rubber hydrochloride, or from enforcing or seeking to enforce against plaintiff's agents or customers any patent rights relating to rubber hydrochloride, and more particularly restraining Marbo Patents, Inc., from prosecuting an infringement suit now pending against The Goodyear Tire & Rubber Co., Inc., in the United States District Court for the Northern District of Illinois, Eastern Division; for a decree that defendants grant to plaintiff a free license under all patents owned by them relating to rubber hydrochloride; and for an accounting of damages.

Plaintiff is a citizen of Ohio. Defendants are citizens of Delaware. The amount in controversy exceeds $3,000, exclusive of interest and costs.

During the years 1932–1934, inclusive, plaintiff was engaged in the development of rubber hydrochloride as a commercial product. Early in 1932 plaintiff's problem was to produce a suitable film which would withstand exposure to light, be free from cloudiness and be sufficiently flexible. For the three succeeding years a large amount of work was done in plaintiff's research laboratory to solve this problem, involving an expenditure of $125,000. About March, 1932, William C. Calvert, a research chemist employed by plaintiff, was assigned to this work. The greater part of the development work was done by Calvert who was fully informed regarding all the work and had access to all the confidential information of plaintiff regarding it. He was under contract with plaintiff not to divulge to others this confidential information during his employment. In June, 1934 plaintiff placed on the market a successful commercial product known as "Pliofilm" suitable, among other things, for raincoats.

In 1933 Marsene Corporation of America, (herein referred to as "Marsene") predecessor of defendants, was working on the production of transparent sheet material made from casein, suitable for impervious wrapping material and other uses. Their product was not satisfactory. Williams, vice president of Marsene, visited plaintiff's plant at Akron, Ohio, under the impression that the resinous material manufactured by plaintiff might be used as a coating for their sheet material. In conversations with plaintiff Williams was informed that plaintiff was developing a rubber hydrochloride product. For several months thereafter negotiations were conducted between plaintiff and Marsene for the purchase of plaintiff's product. In June, 1933 Marsene's request to purchase this product was definitely refused.

Shortly after this refusal Williams secretly retained plaintiff's research worker Calvert knowing that Calvert was conducting plaintiff's hydrochloride development work. This secret employment of Calvert by Marsene continued for over a year during which time Calvert was frequently consulted at his home by Williams, vice president of Marsene, and by Dr. Gebauer, head chemist of Marsene. In response to written inquiries by Williams Calvert sent at least twenty written reports on technical matters to Williams. Yet Williams has failed to produce any of these reports or any correspondence between him and Calvert.

Plaintiff has produced in evidence stenographic notes of Marsene correspondence with Calvert and one letter from Calvert to Williams which was preserved by a former employe of Marsene. While Calvert continued in plaintiff's employ special precautions were taken to conceal the source of the salary checks paid to Calvert by Marsene. It further appears in the correspondence that Calvert informed Williams of the search that had been made by plaintiff into the patent situation in the rubber hydrochloride field and particularly plaintiff's investigation regarding the Bradley & McGavack United States patent No. 1,519,659. In a letter to Calvert, Williams wrote: "We are interested indeed as to the literature search being made with respect to the McGavack patent. Will you kindly advise us at your earliest convenience of the true status as revealed by your search."

The correspondence also reveals that inquiries of Calvert by Marsene related to

technical matters respecting rubber hydrochloride or to ingredients and processes employed in its manufacture. Only slight mention is made of casein sheet material. The correspondence is full of references to the development of a commercial rubber film from rubber hydochloride. It appears from this correspondence that Williams obtained from Calvert confidential information regarding Goodyear's development work on rubber hydrochloride.

Williams wrote to Calvert: "As to fillers for rubber hydrochloride I was hoping that we would get through you something which we did not have ourselves."

In the postscript Williams added: "How far are you from market and have you licked the problem of giving a perfectly clear sheet in one operation."

The affidavits filed support plaintiff's charge that Marsene learned of the existence of the Bradley & McGavack patent from Calvert. They definitely establish that Marsene learned from Calvert the significance of this patent and its bearing on plaintiff's rubber hydrochloride development. The patent is one of a number directed to rubber hydrochloride. Its importance in the hydrochloride art would be fully appreciated by one having knowledge of the Goodyear processes. The secret information imparted by Calvert taught Marsene the full significance of this patent. The conduct of Marsene in acquiring the patent was reprehensible and the taint of that conduct bars Marsene from asserting the patent against plaintiff.

After consulting with Calvert, Marsene proceeded to take steps to acquire an interest in the Bradley & McGavack patent. After extended negotiations with the owner of that patent title was acquired by defendant Marbo Patents, Inc., a subsidiary formed by defendant Marbon Corporation, the successor to the business of Marsene.

While there is some conflict in the affidavits respecting less important matters, it is significant that defendants have produced no affidavits controverting the vital elements of plaintiff's case. Defendants' officers and employees charged with fraud furnish no affidavit denying the fraud. Williams, Borg and Calvert obtained for defendants the benefit of Goodyear's developments in the field of rubber hydrochloride. They are named as defendants to give them an opportunity to defend themselves. They have not done so. Not one of them has made an affidavit on this motion. Defendants' affidavits are affidavits of their counsel and their chemists. None of them is charged with any part in or any knowledge of the secret hiring of Calvert to betray his employer.

Suit has been brought by Marbo Patents, Inc., against The Goodyear Tire & Rubber Co., Inc., plaintiff's subsidiary and customer, in the United States District Court for the Northern District of Illinois, Eastern Division, for infringement of the Bradley & McGavack patent based on the use and sale of rubber hydrochloride products made by plaintiff.

The evidence establishes a prima facie case of fraud. Shellmar Products Co. v. Allen-Qualley Co., 7 Cir., 36 F.2d 623; Id., 7 Cir., 87 F.2d 104; Lykken v. International Pulverizing Corp., 35 U.S.P.Q. 153.

If its case is sustained on final hearing plaintiff will be entitled to protection by this court against injury at the hands of defendants through enforcement of the Bradley & McGavack patent.

Full and complete relief cannot be obtained by plaintiff in the infringement suit in Illinois because neither plaintiff nor defendant Marbon Corporation is a party to that suit.

Justice requires that the rights of the parties be maintained in statu quo pending final determination of the issues in this case.

A preliminary injunction will be granted.