**FORD MOTOR CO.**

v.

**ALLTITE MOTOR PRODUCTS CORP. OF FLORIDA, Inc.**

Civ. A. No. 414–T.

United States District Court
N. D. Florida, Tallahassee Division.

Jan. 8, 1954.

For Final Decree, see 117 F.Supp. 584.

Adair, Kent, Ashby & Crenshaw, Jacksonville, Fla., for plaintiff.

Moore, Henderson & Buford, Tallahassee, Fla., for defendant.

DE VANE, Chief Judge.

This is a suit charging defendant with unfair competition and trademark infringement and seeks an injunction, an accounting and such other and further relief as the nature of the case may require.

Plaintiff claims in the complaint that defendant has sold, is now selling and will, unless restrained by this court, continue to sell Ford parts, reconditioned by defendant, to Ford dealers for resale, marked in a manner calculated to deceive purchasers from Ford dealers and lead them to believe that plaintiff is the source of the reconditioning of such parts; that sales have been diverted from plaintiff to defendant by reason of such unfair competition and plaintiff has been injured in its good will.

Defendant's answer is a general denial of the allegations of the complaint and raises the affirmative defenses of laches and statute of limitations.

Both plaintiff and defendant have taken depositions of numerous witnesses and have introduced in evidence numerous exhibits and the case is now before the court on plaintiff's motion for summary judgment on the ground that there is no genuine issue of any material fact and that plaintiff is entitled to the relief prayed for as a matter of law.

Briefly summarized, the evidence in the case discloses that approximately twenty years ago plaintiff instituted an exchange system whereby Ford dealers offered to Ford vehicle owners Ford factory reconditioned replacement parts in exchange for worn-out parts and a payment in cash which was less than the outright purchase price of the parts. To assist dealers, garages and fleet owners in ordering such parts for Ford cars and trucks plaintiff published a parts and accessories catalogue, which set forth a basic parts number system and gave a number according to that system to each part. The particular number system is unique with plaintiff. Customers are invited to and customarily do order Ford parts from Ford dealers by use of the numbers appearing in the Ford catalogue. Plaintiff pioneered this system and built up a very large exchange business which it alleges that because of the high quality of the reconditioned and remanufactured parts developed extensive good will for plaintiff.

After the second World War it was determined by plaintiff to handle the reconditioning of certain replacement parts on a decentralized basis through Ford authorized reconditioners under contract with plaintiff, who reconditioned Ford parts according to reconditioned parts specifications and quality standards established by plaintiff and under its supervision. Certain exchange parts such as clutch disks and clutch pressure plates continued to be and still are centrally remanufactured by or for plaintiff at the factory according to new parts specifications and standards prescribed by plaintiff.

Under the established exchange system Ford dealers are able to offer Ford ve-

hicle owners both the replacement parts reconditioned by authorized reconditioners and clutch disks and clutch pressure plates remanufactured at the factory to new parts standards. Exchange parts reconditioned by Ford authorized reconditioners bear a distinctive label to distinguish them from exchange parts which have been remanufactured by plaintiff at the factory. Authorized reconditioned parts are also distinguished from remanufactured parts by the cartons in which they are packed.

During the second World War when auto parts became scarce and hard to get, Charles Scheer began the reconditioning of auto parts and offered them for sale to dealers for resale to the public. In 1946 the business was incorporated under the name of Alltite Motor Products Corp. of Florida, Inc., the defendant in this case. Shortly after its organization defendant introduced and has continued the practice of reconditioning Ford parts and placing them in plain cartons bearing no mark denoting the origin of such parts other than Ford basic part numbers disclosed by the Ford parts number catalogue. These packages were sold to Ford dealers only for resale to the public while other parts reconditioned by defendant were placed in cartons plainly bearing defendant's name and a part number according to a catalogue supplied to jobbers by defendant. This catalogue and parts numbers differ from the Ford basic parts number system. Plaintiff claims that this practice constitutes unfair competition and trademark infringement and that it is entitled to an injunction prohibiting the same.

■ When the case came on for argument on motion for summary judgment counsel for defendant, in the argument and in the brief filed with the court, conceded that defendant has not sustained any of its defenses and that plaintiff is entitled to injunctive relief as prayed for in its complaint. For this reason it is unnecessary for the court to further detail the evidence upon which the injunctive relief should be granted. Suffice it to say that the evidence in the case clearly establishes plaintiff's right to the injunctive relief sought.

■ Plaintiff also seeks an accounting for the purpose of forcing the defendant to disgorge the illegal profits it has allegedly received as a result of its unfair competition and trademark infringement. Defendant being guilty of fraud in its sale of deceptively marked products to Ford dealers, plaintiff is, as a matter of law, entitled to an accounting of defendant's profits derived from such sales. There is, however, a special, equitable reason why an accounting should not be ordered on the state of the record now before the court. Since the institution of this suit defendant has made an assignment under the provisions of Chapter 727, Florida Statutes of 1953, F.S.A. of all its assets for the benefit of creditors and is now out of business. It is no longer reconditioning and offering to Ford dealers reconditioned Ford parts. There is no evidence on record showing the value of the assets that passed into the hands of the receiver. If they are substantial plaintiff is entitled to share in such assets along with other creditors and to have the cash realized from the sale of such assets impounded until defendant's liability on the accounting is determined. Accordingly, plaintiff may have discovery to determine whether the assets of defendant in the hands of the receiver are sufficient to justify proceeding further in this case for an accounting.

A final decree will be entered herein giving to plaintiff the injunctive relief prayed and granting to plaintiff the right of discovery to determine whether the assets of defendant in the hands of the statutory receiver are sufficient to warrant bringing the receiver into this case for the purpose of impounding such assets and proceeding with an accounting.