INSECT–O–LITE COMPANY, Inc., Plaintiff,

v.

William C. HAGEMEYER, James C. Noyes, Meredith J. Beirne, Hagemeyer Chemical Co., Inc., Defendants.

No. 682.

United States District Court E. D. Kentucky, Covington Division.

May 17, 1957.

J. Warren Kinney, Jr., Cincinnati, Ohio, for plaintiff.

Frank Zugelter, Cincinnati, Ohio, William Ware, William E. Wehrman, Covington, Ky., for defendants.

SWINFORD, District Judge.

This is an action arising under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1114, which gives this court jurisdiction. The matter in controversy also exceeds, exclusive of interest and costs, the sum of three thousand dollars, is between citizens of different states and therefore within the jurisdiction of this court under 28 U.S.C.A. § 1332(a) and § 1391 (a, c).

The plaintiff is an Ohio corporation with its principal office and place of business in Cincinnati, Ohio. It is the owner of U. S. trade-mark registration No. 604,061 for Insect-O-Lite for electrically heated hollow receptacles in which volatilizable insecticidal crystals are placed. The function and purpose of this article is to attract and destroy insects in homes and places of business. It is a relatively small item made of a plastic and composition material to be hung on the wall and attached by cord to an electric light plug. It is in evidence as Plaintiff's Exhibit 10.

The defendants, William C. Hagemeyer and James C. Noyes, are residents of Ft. Mitchell, Kentucky; the defendant, Meredith J. Beirne, is a resident of Ft. Thomas, Kentucky; and the defendant, Hagemeyer Chemical Co., Inc., is a Kentucky corporation with its principal place of business in Erlanger, Kentucky.

The plaintiff alleges that its trade-mark has been infringed and seeks to permanently enjoin the defendants from manufacturing or selling vapor lamps which so nearly resemble those manufactured and sold by the plaintiff as are likely to lead purchasers to believe that such items are the plaintiff's vapor lamp.

The plaintiff further states that as a consequence of the alleged infringement of its trade-mark the defendants have deliberately and by conspiracy committed unfair trade practices and have been guilty of unfair competition. It asks for damages in addition to a permanent injunction.

The factual situation out of which the injuries that are charged arose is involved and somewhat obscured by an obvious bitterness which exists between the litigants. Throughout the trial of the case the court was conscious continually of an undercurrent of personal animosity. Such a situation does not lend itself to the full and free enlightenment of the trial judge.

The decision of this case rests primarily upon the acts and conduct of one individual, the defendant, Meredith J. Beirne.

In the early part of 1952 the plaintiff introduced to the trade an insect vapor lamp designed to attract and destroy insects. While the idea of insect lamps was not new the plaintiff's lamp which made use of volatilizable insecticidal crystals as a vaporizer was somewhat novel in its combined design and function for which the U. S. Patent Office issued trade-mark registration No. 604,-061 for the name Insect-O-Lite.

At the time the plaintiff began to manufacture this lamp the defendants, James C. Noyes and Meredith J. Beirne, began to handle the item as a sales agency. In this way Beirne became familiar with the function of the lamp and had a knowledge of the fact that it was an attractive and saleable article.

In the fall of 1952 Beirne left Noyes and became an employee of the plaintiff for the primary purpose of promoting and selling Insect-O-Lite vapor lamps. Beirne became a competitor of his former associate, Noyes, who was continuing to sell another insect vapor lamp.

In 1952, 1953 and 1954, the plaintiff expended something over $200,000 advertising the lamp under the name Insect-O-Lite. It was widely publicized throughout an extended area of the United States and especially so in the states where the defendant, Beirne, was working.

In September of 1954, the defendant, William C. Hagemeyer, with Noyes and Beirne, formed the defendant corporation, Hagemeyer Chemical Co., Inc. Through Beirne, the process used to make the container for the Insect-O-Lite lamp was acquired by the newly formed company and the plaintiff's Insect-O-Lite to all appearances and functional purposes was copied identically and sold under the name Insect Light.

It should be pointed out at this time that the selling season for insect lamps was in the spring and early summer of the year.

Apparently deliberately planning for the selling season of Insect Light by the Hagemeyer Chemical Co., Inc., the de-

fendant, Beirne, visited the office of Mr. Parnell, president of the Insect-O-Lite Co., Inc., his former employer, in the late winter of 1955. He advised Mr. Parnell that he planned to return to the employ of that company in March for the purpose of selling Insect-O-Lites. This he never did. There is also evidence to the effect that on this visit Beirne obtained information as to the sale price of the plaintiff's vapor lamp for the 1955 season.

With his knowledge of the function of the plaintiff's lamp, his experience as a salesman and his knowledge of the retail outlets for such an item, the defendant, Beirne, by methods of inference, innuendo and deception, induced the trade to substitute the Insect Light of the defendant, Hagemeyer Chemical Co., Inc., for the Insect-O-Lite vapor lamp of the plaintiff. His exploitation of the situation was effective. The sales of the plaintiff decreased 66%.

An observation of the two vapor lamps could not but lead the public to a belief that they were identical. Certain merchants disposed of their stock on hand of Insect-O-Lites and replaced it with Insect Lights, believing that they were dealing with the same company that had sold them Insect-O-Lites. Some of the retailers were informed that the Insect-O-Lite Co., Inc. had gone out of business or that the defendant, Hagemeyer Chemical Co., Inc., was a Kentucky branch of the Insect-O-Lite Co., Inc. Others were advised that the Insect Light was a new model of the Insect-O-Lite and that Insect-O-Lite was no longer being manufactured. These facts and other similar instances which are equally as reprehensible are reflected in the record.

It is recognized that to obtain evidence on issues of this character is difficult. Merchants do not like to become involved in controversies between manufacturers. While the court cannot, of course, assume that there were other witnesses who would testify to similar transactions, it may be reasonably inferred that the defendant, Beirne, at every opportunity created an atmosphere throughout the territory which was unfavorable toward the plaintiff's lamp.

While this is denominated a trademark infringement action, it should be pointed out that trade-mark infringement is but a branch of the broader law of unfair competition. West Point Manufacturing Co. v. Detroit Stamping Co., 6 Cir., 222 F.2d 581, certiorari denied 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749; Brown & Bigelow v. B.B Pen Co., 8 Cir., 191 F.2d 939.

The infringement of a trade-mark is a form of unfair competition, and facts, which would support an action for infringement and one for unfair competition, are one and the same. There cannot be trade-mark infringement without the presence of acts, which amount to unfair competition, but there can be unfair competition without the existence of trade-mark infringement. Academy Award Products v. Bulova Watch Co., D. C., 90 F.Supp. 12; American Automobile Ass'n v. Spiegel, 2 Cir., 205 F.2d 771.

I am of the opinion that the plaintiff's trade-mark was not infringed. The adoption by one manufacturer of the features of another's products, common to articles of that class, does not of itself amount to unfair competition. Rathbone, Sard & Co. v. Champion Steel Range Co., 6 Cir., 189 F. 26, 37 L.R.A., N.S., 258; West Point Manufacturing Co. v. Detroit Stamping Co., supra.

There is no legal liability against one who imitates in detail the product of another if it is just as true in its application to the goods of the second adopter as to those of the first. To entitle a name to equitable protection as a trade-mark, the right to its use must be exclusive and not one which others may employ with as much truth as those who use it. Purchasers, though mistaken, are not in such a case deceived by false representations and equity will not enjoin against telling the truth. Canal Company v. Clark, 13 Wall. 311, 80 U.S. 311,

20 L.Ed. 581; Reddy Kilowatt, Inc. v. Mid-Carolina Electric Co-op., 4 Cir., 240 F.2d 282.

Words or other indicia in common use may be used upon labels or in connection with goods if they are descriptive of the uses for which goods are offered for sale. One so acting is not an infringer of a trade-mark or trade-name used by another even though prior in time, but fair competition and honesty require him so to use them as not to imitate those of another. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A., N.S., 1040.

The size, shape, color, and descriptive words Insect Light on the defendants' vapor lamp were all functional and with the exception of the color, which might have been different, about the only design that could have been followed to accomplish the purposes intended. There was nothing novel or distinctive, aside from the functional uses, to which either the plaintiff's or the defendants' lamp could lay claim. Numerous other vapor lamps had been in existence. While the term Insect-O-Lite has been subjected to trade-mark, there is nothing so unusual or singular in the phrase that a court of equity should permit it to pre-empt the field to which it seeks to adapt itself. It had been in use for only a few months and could not be said to have become identified in the mind of the purchasing public to such an extent that the name had acquired a secondary meaning.

It is a recognized principle of law that where words have acquired a secondary meaning with respect to an article of merchandise, the originator or owner of the trade-mark is entitled to relief by injunction against anyone subsequently attempting to use the words in a manner likely to enable the later user to sell his wares as the product of the owner or earlier user. Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F. 2d 64; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. That is not the case at bar.

I must hold that the defendants had a right to produce and sell the item identified as Insect Light as represented by Plaintiff's Exhibit 12. This right, however, must be exercised in such a way that the purchasers of the product are not deceived into the belief that they are purchasing the product of the plaintiff. The defendants cannot palm off their product by positive misrepresentation nor by negative conduct which is calculated to mislead. West Point Manufacturing Co. v. Detroit Stamping Co., supra; James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F.2d 6.

It will have to be recognized that this so called more equitable approach to the question is a modification of the rule announced in this circuit in the case of Rathbone, Sard & Co. v. Champion Steel Range Co., supra. In that case, decided in 1911, the court, following American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 103 F. 281, 50 L.R.A. 609, said that even though the defendant deceived the public by fraudulent means there was no right of action unless it resulted in the sale of such goods as those of the complainant. Courts at that time were very jealous of guarding against monopolies and to require a plaintiff to sustain a more stringent test of his right to protection. Whether this softening of the law or modification of the rule is wise or unwise is not for this court to say. The change is, nevertheless, both apparent and confusing.

The present rule seems to be that where large sums of money have been spent over a period of time to build up a value in an article under a certain name, there is a valuable property right in the name and form of the product. Equity today will not permit the name and form of the merchandise to be appropriated to the use and advantage of another and to the injury of the one who has created the good will. National Biscuit Co. v. Kellogg Co., 3 Cir., 91 F.2d 150. It should be pointed out that this case was reversed by the Supreme Court

in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, but the reversal was on other grounds. The Supreme Court sustained the principle I have announced.

■ In all cases of this character the gravamen of the offense is the intent to deceive. Kay Jewelry Company v. Gay's Jewelry, Ky., 277 S.W.2d 30; Kentucky Distilleries & Warehouse Co. v. Wathen, C.C., 110 F. 641.

■ In the opinion of the court the action and conduct of the defendant, Beirne, clearly establishes an effort on his part to deceive the former customers of the plaintiff and to palm off the goods of the defendant as the goods of the plaintiff by representing that the plaintiff was no longer in existence and that the defendants' goods were an improvement by the plaintiff in the item Insect-O-Lite.

In the matter of establishing a case of unfair competition, the instant case seems to conform to the language of the court in the very recent case of Sasser v. Senco Products Inc., 6 Cir., 242 F.2d 565, 566. This case was decided on March 26, 1957. In that opinion the court said:

> The proofs further disclose that appellants had hired away from appellee an important employee who held the position of assistant to appellee's office manager, in order to secure secret trade information consisting of a list of appellee's best accounts, and the prices charged to its customers, resulting in undercutting of prices by appellants and the loss of many customers and great damage to appellee. The evidence also shows that appellants used appellee's arbitrary name and number designations for parts and staples, which they affixed to parts and staples which were not manufactured by appellee, but which appellants sold to the customers of appellee without any other indication of their origin. The foregoing conduct, repeated on numerous oc-

casions by appellants amply supported the district court's findings that appellants were guilty of unfair competition. See Goodyear Tire and Rubber Co. v. Marbon Corp., D.C., 30 F.Supp. 420; Ford Motor Co. v. Alltite Motor Products Corp., D.C., 117 F.Supp. 460, 584; Keller, Inc., v. Chicago Pneumatic Tool Co., 7 Cir., 298 F. 52.

In passing upon the sufficiency of the evidence to establish the acts of unfair competition on the part of the defendant, Beirne, I must agree with Lord Chancellor Halsbury of the House of Lords in England in the case of Reddaway v. Banham, [1896] A.C. 199, p. 204(25) Eng.Rul.Cas. p. 197, when he said: "For myself I believe the principle of law may be very plainly stated; and that is that nobody has any right to represent his goods as the goods of somebody else." West Point Manufacturing Co. v. Detroit Stamping Co., supra [222 F.2d 591].

Whether this matter of unfair competition is governed by federal law or Kentucky law seems to be in doubt. In the case of Maternally Yours, Inc., v. Your Maternity Shop, 2 Cir., 234 F.2d 538, 546, decided June 6, 1956, Judge Waterman, writing the opinion for the court said that the claim of unfair competition was governed by the law of New York and the claim of trade-mark infringement was under the federal statute. Chief Judge Clark in a concurring opinion raises the question and apparently answers it that the whole matter is governed by federal law under the Lanham Act. I quote the following from Judge Clark's opinion:

> "Then, too, I do not see how we can avoid the clear federal jurisdiction arising under the new and quite extensive provision covering the false description or representation of goods introduced into commerce. Lanham Act, § 43(a), 15 U. S.C. § 1125(a). By the broad and liberal construction properly given this remedial legislation, as in L'Aiglon Apparel, Inc., v. Lana

Lobell, Inc., 3 Cir., 214 F.2d 649, the major and more important portions of the relief here granted would be supported under federal law. I think we must consider the applicability of this statute, and cannot avoid it, even though counsel does not cite it; for we are bound by the law of the land, whether cited to us by counsel or not. See Sword Line, Inc., v. United States, 2 Cir. 230 F.2d 75. Indeed, there is indication here and elsewhere that the bar has not yet realized the potential impact of this statutory provision."

This question was not briefed by counsel nor presented in arguments and I do not feel that it is necessary to a determination of the issues that it be passed upon here. I am inclined to agree with the views expressed by Judge Clark. Apparently the materiality of the question could not be pertinent since the United States Court of Appeals for the Sixth Circuit and the Court of Appeals of Kentucky agree.

In the case of Grocers Baking Co. v. Sigler, 6 Cir., 132 F.2d 498, it was expressly held that a state of facts may be sufficient to show unfair competition even though insufficient to support a claim of technical trade-mark infringement. Socony-Vacuum Oil Co., Inc., v. Rosen, 6 Cir., 108 F.2d 632; Chesebrough Mfg. Co. v. Old Gold Chemical Co., Inc., 6 Cir., 70 F.2d 383; Shaler Co. v. Rite-Way Products. Inc., 6 Cir., 107 F.2d 82. In Grocers Baking Co. v. Sigler, supra, [132 F.2d 501] the court said:

"Moreover, under Kentucky law which is applicable here, all that appellant had to show was probable confusion.

"A suit to enjoin unfair competition and common law trade-mark infringement is governed by local law. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103. Cf. Fashion [Originators'] Guild [of America] v. Trade Commission, 312 U.S. 457, 468 [668], 61 S.Ct.

703, 85 L.Ed. 949; James Heddon's Sons v. Millsite Steel & Wire Works, Inc., supra, 6 Cir., 128 F.2d 13.

"Under Kentucky law a tradename does not have to be identical with another in order to justify a court in enjoining its use. It is sufficient if it is so similar to the earlier adopted trade-mark as to make it likely that unsuspecting persons would be led to believe that it was the same. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A., N.S., 1040. It is not necessary to show actual confusion by similarity in names. It is sufficient that the name selected is so similar to that used by its competitor as likely to produce deception. Mayfield Milling Co. v. Covington Bros. & Co., 212 Ky. 262, 278 S.W. 562. To constitute unfair competition it is not necessary that there be a purpose to pass off one's product as that of another, it being sufficient that because of insignia or similarity of product purchasers believe it to be the product of another, or that the insignia or symbol has a tendency to, and probably will, deceive some part of the public. This is the established law of Kentucky. Rains & Sons v. White, Haucke & Co., 107 Ky. 114, 52 S.W. 970; Avery & Sons v. Meikle & Co., 81 Ky. 73; Crutcher & Starks v. Starks, 161 Ky. 690, 171 S.W. 433; Metcalfe v. Brand, 86 Ky. 331, 5 S.W. 773, 9 Am.St.Rep. 282; E. H. Taylor, Jr., & Sons Co. v. Taylor, 124 Ky. 173, 85 S.W. 1085."

The language of this case was apparently approved by the Court of Appeals for the Sixth Circuit in Statler Mfg. Co. v. George C. Knight Co., 228 F.2d 136, decided December 29, 1955.

The defendants take the position that since Hagemeyer and Noyes as individuals are not shown to have had any active participation in making misrepresentations that the action should be dismissed as to them. I do not think so.

The conduct of Beirne was the result of a plan and arrangement by which the Insect Light was to supplant the Insect-O-Lite product. This is not a criminal conspiracy so the matter of intent does not enter into it. The defendants are equally liable as individuals with the defendant Beirne, and the corporate defendant. The deception practiced was the natural result of financing and sponsoring the salesmanship methods and conduct of Beirne.

The plaintiff's claim of infringement should be denied. The plaintiff's claim of unfair competition should be sustained.

The defendants should be held accountable in damages for losses occasioned by the unfair competition methods which they used toward the plaintiff. They should be enjoined from further representing that the Insect Light is the product of the plaintiff company or that the Insect-O-Lite is an outmoded product of the plaintiff company.

Findings of fact, conclusions of law, and order in conformity with this opinion are this day entered.