**REDDY–KILOWATT, Inc., Plaintiff,**
v.
**MID–CAROLINA ELECTRIC COOPERATIVE, Inc., and National Rural Electric Cooperative Association, Defendants.**

**No. 3794.**

United States District Court
E. D. South Carolina,
Columbia Division.
June 15, 1956.

W. Croft Jennings, Columbia, S. C. (Roberts, Jennings, Thomas & Lumpkin, Columbia, S. C., on the brief), Wallace H. Martin, New York City (Nims, Martin, Halliday, Whitman & Williamson, New York City, on the brief), and W. D. Keith, New York City (Cooper, Dunham, Keith & Dearborn, New York City, on the brief), for plaintiff.

David W. Robinson, Columbia, S. C., Marion B. Holman, Batesburg, S. C., C. Williard Hayes, William T. Cushman and George T. Mobille, Washington, D. C. (Cushman, Darby & Cushman, Washington, D. C., on the brief), Robt. T. Tisinger, Carrollton, Ga., and James F. Dreher, Columbia, S. C., of counsel, for defendants.

HARRY E. WATKINS, District Judge.

This is an action for injunction and damages based upon alleged infringement of trade mark and service mark, and unfair competition. Plaintiff's mark or symbol is an animated, personalized, humanized character called "Reddy Kilowatt", symbolizing electricity. It is used only by privately owned public utility companies in a system of advertising electrical service and promoting the use of electric power as the public servant. It is used in advertisements to dramatize the many services which electricity can perform by showing Reddy Kilowatt performing such services with or without electricity, or delivering the promotional message of the sponsor, sometimes to promote sales and often to promote public relations. In this action plaintiff challenges the right of defendant, National Rural Electric Cooperative Association, (hereinafter called Association) and its member cooperatives to advertise their services and to promote their public re-

lations through the use of an animated, personalized, humanized, character called "Willie Wiredhand". The question is whether the two characters, as used, are confusingly similar.

### Findings of Fact.

Plaintiff is a Delaware corporation, incorporated June 26, 1953, a few weeks before this action was filed. Upon incorporation, it took over the business previously conducted by Ashton B. Collins, who sometimes did business as Reddy Kilowatt Service. Collins owns 80% of the stock of plaintiff and the remaining 20% is owned jointly by 109 privately owned power companies who are licensees of plaintiff. The business of plaintiff is the same as the business of its predecessor, Ashton B. Collins. Since January 1, 1934, when Collins secured his first licensee until the business was transferred to plaintiff, Collins was engaged in the business of preparing, furnishing and distributing advertising, public relations and promotional material to privately owned power companies who were his licensees.

The central figure around which this material was built was the fanciful character, Reddy Kilowatt, which was and is used for the purposes mentioned above, and is also used to identify the services of plaintiff's business to its licensees, and to identify the licensees to the public in the territory of their operations. The material is prepared in New York and sent to the licensees in the various states where they operate. A vast amount of material is submitted to the licensees to use or not use as they wish, including a so-called "Reddy Kilowatt Mat Service" which shows proofs of mats that are available to the licensees and which they could order for use in their advertising; a magazine called "Reddy News" containing reproductions of advertisements of licensees, and other advertisements proposed by plaintiff; news items and articles of interest to licensees. Some of the material is addressed to the general public as distinguished from the customers of licensees. Such advertising by the licensees covers a wide area.

Plaintiff charged as a service fee to its licensees one cent for each connected meter per year. At the trial Collins estimated that his licensees had about twenty-nine million connected meters, which indicated a gross income from this source of $290,000 per year. At the time of trial plaintiff's staff of employees consisted of 21 persons.

On January 2, 1934, Collins secured his first licensee, Philadelphia Electric Company. At the time of trial plaintiff had 188 licensees in the United States and 38 in foreign countries. Plaintiff and its predecessor consistently have refused to grant licenses or furnish Reddy Kilowatt material to municipally owned electric systems, public utility districts or electric cooperatives such as those financed by loans from the Rural Electric Administration. All requests for such services by such electric distributors have been refused. Plaintiff and its predecessor did business only with privately owned electric light and power companies.

Defendant Association was organized in 1942 and incorporated in the District of Columbia by a group of leaders of the rural electrification program from several states who had gathered in Washington to appear before Congressional Committees. The purpose of the organization was to render to rural electric cooperatives which had been financed under the provisions of the Federal Rural Electrification Act of 1935, services which they individually could not afford or could not otherwise provide. It is a federation of rural electric systems or cooperatives throughout the United States in all states of the union except New Hampshire and Rhode Island. At the end of December, 1955, there were 928 members, including 891 operating systems, 33 statewide associations and 4 regional associations. There are approximately 3,700,000 individual members of the operating cooperatives. Dues are paid by the cooperatives at the rate of 10 cents per connected meter per year. The association helps the rural electric systems achieve efficiency and stability. Of the rural electric cooperatives in this country over 90%

are members of the association. Defendant Mid-Carolina is one such rural electric cooperative, having its principal office in Lexington, S. C. It was organized pursuant to the State Electric Cooperative Act of South Carolina, with funds borrowed from the Rural Electrification Administration in Washington. It was organized by farmers who did not have electric service and could not get it in any other manner. It has 4,120 members and 1,038 miles of rural electric lines in four counties in South Carolina. None of the members is located in any incorporated town. The association prepares its promotional material in Washington, D. C., and sends it to its member systems in the various states. The plaintiff and defendants are all engaged in interstate commerce. About 15% of the total power distributed by the member cooperatives is generated by the members themselves, more than 50% is purchased from privately owned public utilities, and the remainder is purchased from agencies of the Federal Government. A small quantity of power is purchased from municipally owned systems and state agencies.

Long prior to the adoption of Reddy Kilowatt by Collins, animated characters had been in common and widespread use as trade marks, and in advertising, promotion and public relations work for all kinds of products and services. Exhibits D–W; D–X; D–DD and D–EE are collections of such materials. Exhibit D–X is a collection of 258 registrations of animated characters granted by the U. S. Patent Office, illustrating the wide use of such characters as trade marks for a great variety of products and services. The fanciful, animated, humanized character made up from mechanical or electrical parts for use in advertising and promotional work did not originate with Collins. See Exhibit D–EE showing the following: Saturday Evening Post June 10, 1911, Hot Point, Miss Glad Iron and Miss Sad Iron, showing an animated electric iron; Saturday Evening Post (1920) French Battery & Carbon Co, showing Mr. Ray–O–Lite in connection with batteries. This character ·has a badge made up of jagged lines to simulate lightning or electricity. Other animated characters are there shown.

Prior to the date of Collins' first license agreement on January 2, 1934, other animated characters were used as shown in Exhibit D–EE, including Planters Mr. Peanut, Ingram's animated shaving cream jar and tube, Three Minute animated oat kernels and animated characters by Arkansas Power & Light Company, named "The Kilo-Watts". Other advertisements showing animated characters used concurrently in advertising with Reddy Kilowatt include an animated telephone of the Bell System (1950) ; an animated character, Mr. Plug-In (1942) ; an animated fluorescent light tube, and an animated electrical figure Katie Kord. Items 68–73 of Exhibit D–D, all published in the nineteenth century show, respectively, an animated oil bottle, animated green peas and radishes, an animated insecticide bottle and hats and flatirons. Item 74 shows an animated ear of corn published in 1909 and Item 75 shows a gas light and an electric light in animated form named, respectively, "Miss Cubic Foot" and "Miss Kilo Watt", published in 1916. Exhibit D–RR is a group of magazines published by Amercan Waterworks Association showing the use of an animated drop of water. It is humanized and is delivering messages and performing functions of the public water supply service in much the same way that plaintiff's character has been used to personalize electric service. The character is known as "Willing Water". The use of such characters for such purpose was in the public domain and plaintiff has no exclusive right to the use of animated characters in the electrical field.

Plaintiff ˙and Collins have not and do not now have the exclusive use of expressions of the type set forth in Paragraph 8 of the complaint, indicating electric power as the servant. See Exhibit D–DD, Item 66 published in 1928, page 15, containing a reproduction of a South Carolina Edison Company advertisement in-

troducing "Busy Buttons" with statements: "He is always alert—ready to do your bidding. Whatever work you want done around home, shop, or office, you have only to press the button and this happy servant responds—instantly". Exhibit D–WW shows other publications using the expressions: "Meet the new hired help", "Servants for Farm Homes", "Electric Power is a Wonderful Servant", "Electricity is the cheapest hired help obtainable", and "Meet the New Wired Help", Colliers Magazine (1935).

In 1948, it was thought advisable to have an animated character to represent the rural electric program. The Association sought permission to use Reddy Kilowatt, but such request was refused. The mark REA as used by member systems caused the public to confuse the member systems with the Federal Government which was considered harmful. The cooperative members wanted a symbol which could be used in their advertising in the way that such symbols are usually used in connection with the sale and promotion of services and commodities. To select a character that would truly represent the rural electrification program they started a contest announced in their Rural Electrification Magazine for December, 1948. All readers were asked to submit symbolic cartoon figures, with a $50 prize offered to the winner.

A short time after the contest was announced, defendant received from an attorney for Collins a letter warning defendant against the use of such an animated character, and stating that Collins was "the originator and owner of figures symbolizing the use of electric energy". Exhibit D–E. The letter claimed ownership of "many copyrights depicting the use of these figures performing various duties and diversified undertakings" and said that Collins was the owner of "patents and trade marks in this field" and contended that the industry at large had "fully recognized Mr. Collins' legal position". The letter pointed out that Collins had used such expression as "Your Electrical Servant" to dramatize the electric industry in its role as a servant, helper, or assistant in the many tasks to be performed in the home, farm and industry. The letter asked that Collins' rights be called to the attention of prospective entrants in the contest. In order that entrants in the contest would avoid any similarity to the character Reddy Kilowatt, this entire letter was published in the next issue of defendant's magazine. In the Rural Electrification Magazine of February, 1951, three groups of characters were shown, the first consisting of Light, Heat and Power, the second an animated electric bulb with wires for arms and legs named "Energy Ike" and the third, the character subsequently adopted by defendant, and which is challenged in this action, then named "Willie the Wired Hand". After this announcement appeared, an attorney for Collins wrote to defendant as follows:

"My attention has been called to page 16 of 'Rural Electrification' magazine for February 1951, displaying various characters representing light, heat, power, electrical energy, the Wired Hand or the Hired Hand, * * *

"Your February issue reminds me that in 1948 your magazine carried a somewhat similar portrayal of suggested characters to represent electricity, * * *

"At that time, I wrote as per enclosed copy of my letter of December 30, 1948.

"That was almost three years ago and may have escaped the attention of your authors of the February 1951 issue.

"My letter of 1948 called attention to the proposed personifying characters as infringing upon copyrights and trade marks of my client's Reddy Kilowatt, which has for a long period of years established throughout the United States and many foreign countries, the characterization of electricity as light, heat and power in the role of the Electric Servant.

"The substance of my 1948 letter applies with equal force to the article

published in the February 1951 issue of 'Rural Electrification'.

"And it therefore seems appropriate to not only call it to your attention, but to do it promptly lest your February 1951 article with its widespread circulation should encourage others to look upon it as a new and unexplored field, and unwittingly bring about infringement of Reddy Kilowatt's wide-spread rights and coverage in his personification of the element electricity as 'the Electric Servant', 'the Hired Hand', 'the Wired Hand', * * *

"Accordingly, you may wish to call this to the attention of your readers."

The name and character Willie Wiredhand was selected at the 1951 convention and was thereafter used by the defendant Association and its members. The name Willie Wiredhand was selected as a play on the common term for farm labor, Hired Hand, to give the character a rural significance as well as an electrical significance. There was no intent to simulate the character Reddy Kilowatt.

After complaints were made by Collins' attorneys, a conference was held in Washington at which Collins gave the impression to Roberts of the defendant Association that he, Collins, could not conceive of an animated symbol for the use of electricity on the farm which would not infringe upon Reddy Kilowatt, which depicted electricity. Following this conference the Association's attorney on August 7, 1951, wrote Collins denying infringement and stating:

"There is no likelihood of confusion between Reddy Kilowatt and Willie Wiredhand or their respective symbols. None of the patents, trademark registrations and copyright registrations called to our attention is infringed. You will appreciate that Mr. Collins does not have any protection on the method of doing business, such as the services which he renders to the private utility companies, nor is such an exclusive right available to anyone.

"Under the circumstances we have advised our client to continue and develop its use of Willie Wiredhand and the symbol and they intend to follow such recommendation."

The above letter was acknowledged by Collins' former attorney on August 20, 1951, stating that the matter had been referred to counsel, and that defendants' attorneys might "expect to hear from this firm in the near future advising as to further steps to be taken as to Mr. Collins' rights." No word was received until this suit was filed on July 14, 1953.

From 1935 until this controversy arose, Collins and his attorneys have been uniformly successful in preventing electric power companies from using any fanciful animated, humanized, personalized character as a symbol for electricity in advertising and promotional work. Among the characters which he successfully challenged (Exhibit D–FF) were: The Willing Watts, Arkansas Power & Light Co.; Eddie Edison by the Boston Edison Co.; Elec-tric by Cincinnati Gas and Electric Co.; Mr. Watts-His-Name by Bradford Electric Co.; Mr. Watt-A-Worker, New Orleans Public Service Inc.; and others. He also objected to the use of many characters by other than electric light and power distributors, such as manufacturers, service establishments and publishers.

Many letters were sent by Collins or his attorneys to various companies which show the breadth of claims made by Collins. The substance and effect of these letters was to claim that the idea of using any animated, humanized character for the purpose of personifying electricity belongs to Collins and is an infringement of Reddy Kilowatt. They use such expressions as " * * * the tremendous protection and coverage we have"; " * * * a common law right to this 'servant' idea, which is national in scope * * *, the idea of a figure actively engaged as a servant and personifying power is a creation of our client * * * ";

and "* * * the use of a fantastic figure in many poses to portray a servant or advisor for the public * * * has established a common law right * * *". Perhaps the clearest statement of Collins' position is a letter from Collins' attorney to him which Collins forwarded to General Electric Company (1944). (Item 470 of Exhibit D–FF.) The letter states:

"* * * It must be remembered that the idea of using a character for the purpose of personifying electricity and using a character as a servant to illustrate the application of electricity originated with you. We believe you are justified, therefore, in calling upon others to discontinue the use of any character in the electrical field designated for like purposes. * * *"

At the trial Collins pointed out a large number of characters to which he had objected and which he considered to be confusingly similar to Reddy Kilowatt. These exhibits show the wide variety and great difference in appearance of such characters and illustrate the breadth of plaintiff's claim. The attorneys who represented Collins when these letters were written are not the attorneys who now represent him and the plaintiff.

The characters Reddy Kilowatt and Willie Wiredhand are both animated, humanized, personalized symbols of electricity. In some of the drawings they are doing the same thing in the same manner and sometimes they are similarly dressed. Plaintiff's present counsel do not claim that it has the right to the exclusive use of any of these characteristics, but say it is difficult to conceive of a character having all such characteristics and used in the manner indicated which would not be confusingly similar to Reddy Kilowatt. I agree. Regardless of the past or present attitude of the parties, the real issue here is whether the Willie Wiredhand character infringes plaintiff's rights.

■ The names Reddy Kilowatt and Willie Wiredhand are entirely different. The two figures themselves do not look alike. Reddy Kilowatt is made up of a body, arms, and legs of jagged lines simulating lightning, to symbolize electricity, and with a round head having a nose made up from an electric light bulb, and plug-in sockets for ears. Willie Wiredhand is made up of a male plug for the hips and legs, a wire for the body, and a socket for the head, with the push button thereof representing the nose. It suggests the practical application of electricity through the plug, wire and socket, rather than the abstract idea of electrical energy suggested by the lightning-like lines Reddy Kilowatt. The names of the two characters are entirely different in spelling, appearance and sound, and the meaning is about as different as could be imagined, having any electrical significance. The name Reddy Kilowatt suggests the idea of electric energy which is always ready. The name Willie Wiredhand is a play on the conventional term used in rural communities to designate a farm worker, namely a "hired hand", and suggests electricity through the substitution of the Wired for Hired. It suggests that the rural electrification program, by bringing the electric wires to the farm has provided the farm with a Hired Hand or Wired Hand, a definite rural connotation. The two figures are not confusingly similar.

■ The only similarity in the illustrations results from pose, costume or action, but this similarity is understandable in view of the fact that both characters are promoting and advertising electric service and are used in public relations work in the business of distributing electric power. The similarity of certain selected poses is also explained by the fact that Reddy Kilowatt has appeared in thousands of poses doing almost everything humanly possible and in every conceivable activity. Most any pose in which a cartoonist would draw Willie Wiredhand in advertising and public relations work relating to distribution of electricity would be somewhat similar to one of the several thousand poses in which Reddy Kilowatt has appeared. So far as poses in the electrical field are con-

cerned, Reddy Kilowatt has about preempted the entire field. It is not surprising that some of the poses or dress of Willie Wiredhand would be similar to that of Reddy Kilowatt. One artist drawing Reddy Kilowatt and the other Willie Wiredhand, in isolated rooms, showing the symbol of electricity, showing, in general, public relations, celebrating holidays, doing things such as carrying signs, beating drums, doing the things that are fairly common in the cartoon trade to get across a message, are likely to come up with a number of similar positions or poses. For example, there are drawings of the characters dressed in kilts and other drawings with the character wearing the graduating cap. In the field of cartoons, the Scot is fairly common as a symbol for thrift or economy, and during the commencement season the cap and gown are likewise common in such drawings. There was no intent on the part of the defendants or their representatives, including the artist, McLay, to copy any Reddy Kilowatt poses. He did not secure his ideas or inspiration from Reddy Kilowatt and did not have access to the mats of plaintiff prior to drawing the Willie Wiredhand poses. The similarity of poses has resulted from the fact that the parties are using an animated cartoonlike character in advertising, promotional and public relations work, in substantially the same way, which the defendants have a right to do. Any similarity in general appearance in these selected illustrations resulted as a matter of coincidence. The various isolated comparisons do not indicate a likelihood of confusion or establish unfair competition. There is no substantial similarity in the two characters.

To hold that these two figures were confusingly similar because of the similarity in dress or action of certain carefully selected poses from the thousands that have been published by plaintiff would, in effect, mean that it would be impossible to draw any effective animated, personalized, humanized character in an equivalent system of advertising and public relations to symbolize the rural electrification movement that would not be an infringement. Counsel for the plaintiff state that plaintiff now makes no claim that it has the right to the exclusive use of any of these characteristics and makes no claim to any monopoly in such a system of advertising electrical service and promoting the use of electric power, but at the pre-trial conference, at the trial, and in their final brief, counsel for plaintiff say that it is difficult to "imagine" or "conceive" of any character used in the same way as Reddy Kilowatt and having those characteristics that would not be confusingly similar.

In their final brief, counsel for plaintiff clarify their position further by stating, " * * * Each of the two figures has the same significance or suggested meaning. They both suggest electricity. Since both figures are humanized and personalized in performing the same acts, the two characters become confusingly similar and, in fact, indistinguishable. This fact clearly supports the claim of infringement."

Ex parte surveys were conducted under the supervision of plaintiff's attorneys in an effort to show reasonable likelihood that a substantial portion of the general public is likely to be misled or confused into believing that defendants' character Willie Wiredhand is Reddy Kilowatt. The persons interviewed who were called to testify stated that they were well acquainted with Reddy Kilowatt in electric light and power advertisements; that they knew of no other animated characters used in such power company advertisements and that as a result of these factors they thought the character was Reddy Kilowatt. The witnesses had no familiarity with Willie Wiredhand and had not previously seen him. The fact that both characters are symbols of electricity and that both are animated, humanized and personalized explained their mistake. Most of the people interviewed did not read the text. The surveys introduced in evidence were taken mostly in areas where plaintiff's licensees had advertised heavily and where Willie Wiredhand was unknown. The public witnesses

testified that since they recognized that the character shown them was in an advertisement having to do with electric power, and since they had never seen any other character than Reddy Kilowatt in such ads, they thought the character was Reddy Kilowatt. The fact that many of the persons interviewed readily distinguished the character from Reddy Kilowatt does not appear in the summaries. The summaries and tabulation sheets are so inaccurate as to be of little, if any, probative value. Some surveys conducted at the instance of plaintiff's attorneys in rural areas where Willie Wiredhand is used, were not divulged until the trial, and the results of those surveys were not offered in evidence, and none of the persons interviewed was called as a witness. These factors demonstrate the unreliability and lack of probative force of this type of testimony.

Plaintiff says that its public consists of its licensees and not the general public. If this be true there is no evidence to indicate confusion on the part of plaintiff's customer-licensees between the two characters, and plaintiff now makes no claim that it has been damaged by any such confusion. Plaintiff has stated that it now seeks only an injunction and does not ask for any damages. Since 1951 Collins and plaintiff have acquired about 46 new licensees. Their business has not suffered or gone down in volume by reason of any alleged confusion of characters.

Since plaintiff deals only with privately owned public utilities and the cooperatives are prohibited by law from serving anyone who is already receiving central station power there is no competition between plaintiff and the defendants. No privately owned power companies have sought to use Willie Wiredhand. The areas in which cooperatives may extend their lines are limited by Act of Congress under which they receive their loans and by state laws. Cooperatives are only permitted to serve customers who cannot get electric power from a private utility. There is also an economic limitation as the cooperatives which buy power from privately owned companies cannot extend their lines into areas which private power companies want to serve.

It has happened that when a power load grows up in the area served by a cooperative, the private power company will extend its lines to take over that load. This means the loss of the better customers of a cooperative to a private company and is called pirating by the cooperative officials. There is no evidence of a cooperative having taken customers from a private utility. In cases where a new house is built in a fringe area, between the areas served by a cooperative and a private utility, the factors which will determine who shall serve them are (1) the price differential and (2) whether or not the cooperative is purchasing its power from the power company. There is little or no competition for customers between the cooperatives and the licensees of plaintiff, even in the so-called fringe areas. Each has its particular area. The members of the public buy their electric power from the only source available.

While there may be unfair competition, even though there is no actual competition in rare cases, the presence or absence of actual competition is of importance in determining whether there is likelihood of confusion.

The fact that parties deal with different classes of people is also important in unfair competition cases. The present case is unique in that there are no reported decisions where the alleged unfair competition consisted of furnishing services to a class of customers to whom plaintiff refused to sell its services.

Plaintiff contends that there is competition because of an existing difference of opinion regarding public versus private power and private enterprise versus "socialism". I see no merit in this contention, and find nothing in the evidence to support it. The use of Willie Wiredhand by the defendant Association and its member systems will not impair the value of the trade mark character Reddy Kilowatt and cause irreparable damage to plaintiff.

The American Law Institute, Restatement of the Law of Torts, Ch. 35, Sec. 728, under the heading of "Confusing Similarity", states the following general propositions:

"A designation is confusingly similar to a trade-mark or trade name under the rule stated in Section 717 if prospective purchasers are likely to regard it as indicating the source identified by the trade-mark or trade name."

Section 730, Limitation of Protection With Reference to Kind of Goods, Services or Business states:

"The interest in a trade-mark or trade name is protected under the rule stated in Section 717 with reference only to (a) competing goods, services or businesses, and (b) other goods, services or businesses which, in view of the designation used by the actor, are likely to be regarded by prospective purchasers as associated with the source identified by the trade-mark or trade name."

Under the above, the following comment appears:

"(b) Limits of Protection. While the class of goods, services or businesses with reference to which the interest in a trade-mark or trade name is protected has been greatly expanded, the class is nevertheless limited. The interest is not protected against the use of a similar designation for any goods, services or business. It is protected only within the limits fixed by the likelihood of confusion of prospective purchasers. * * * "

Applying this rule to the present case, it is perfectly clear that there is no likelihood of confusion of prospective purchasers of the goods or services of plaintiff and defendants.

Defendant Association has filed a counterclaim in which it is alleged that four of plaintiff's trade mark registrations are invalid because each was procured by a false or fraudulent declaration or representation made in the application for registration. The counterclaim asks that the registrations be cancelled and that defendant be awarded damages. It is claimed that Registration 302,093 was not and had not been in use for the goods specified; that its renewal had not been used in interstate commerce; and had not been continuously used and applied to the goods in applicant's business since March 14, 1926. It is charged as to Registrations 302,093, 322,223 and 342,888 that any use thereof prior to January 1, 1934 had not been continuous and had not been in any business of the applicant. It is charged that from March 14, 1926 to January 1, 1934 there was no use of the services in interstate commerce as to Registration 566,392. There is insufficient evidence to sustain any of these charges.

Ashton B. Collins first became connected with the generating, transmission, distribution and servicing of electric power in 1925 as an employee of Alabama Power Company. In March of 1926 Ashton B. Collins conceived a character, which he named Reddy Kilowatt, as a trade mark for the public relations and advertising programs which he was then devising and using for the Alabama Power Company. During the years 1926 through 1929 Collins remained in the employ of Alabama Power Company and used the trade mark character Reddy Kilowatt to identify his programs relating to promotions, sales and advertising which he regularly furnished to the Alabama Power Company and to its affiliated companies. When Collins left the employ of the Alabama Power Company in 1930, use of the trade mark character Reddy Kilowatt by that company and its affiliates ceased and was not again renewed until 1934 in which year Alabama Power Company accepted a written license from Collins for the use of the character in its territory. In the period 1926 through 1929 the trade mark character Reddy Kilowatt was used by Collins on promotional goods moving in interstate commerce. In the period 1930 through 1933 Collins travelled throughout the United States and during these travels regularly exhibited his pro-

posed programs to prospective users among the privately owned public utilities. In this activity, and in further activities by correspondence and circularization of these prospective users, Collins used the trade mark character Reddy Kilowatt to identify his proposed programs and materials connected therewith. Collins' increasing attempts in the period 1930 through 1933 to interest privately owned public utilities in the use of the character Reddy Kilowatt and his proposed programs associated with and identified by that character did not immediately achieve success, and it was not until January 1, 1934 that he issued his first written license for the use of the character and programs and services associated therewith. In 1936 Collins ceased all other business connections and thereafter devoted his full time to what is now the business of plaintiff, an activity which he continued until his business was taken over by plaintiff in July, 1953.

Collins and the plaintiff have exercised control over the use of the character Reddy Kilowatt. The licensees have been personally selected by Collins and such licensees have operated under written leases which are substantially uniform in terms. Each licensee is limited to a particular territory and has agreed to keep the trade mark character in standardized form. The licensor has retained the right of entry to licensees' programs and materials used in connection with the character and the right to cancel the license on 90 days' written notice. Collins has kept in contact with the licensees, traveling extensively each year in connection with such activities.

■ Defendants contend that the character and name, Reddy Kilowatt, are not trade marks or service marks of plaintiff because they do not indicate to the public any products or services having their source of origin in plaintiff or its predecessor, Collins; that they do not indicate to the public any single known or unknown source of origin for any products or services, but are simply a representation of electric current or power or electric service furnished by a known or unknown supplier; that Reddy Kilowatt simply represents electric service and does not identify plaintiff or any particular power company. These contentions are not supported by the evidence. While it is true that the general public has never heard of Collins or his company, and the character and name Reddy Kilowatt do not indicate Collins or his company to the man on the street, the trade mark, nevertheless, belongs to plaintiff, whose public consists of its present and prospective licensees. The character and name are used by plaintiff's licensees to identify their services and public relations and promotion programs to their public, which is the general public in their areas. This use by plaintiff's licensees also inures to the benefit of plaintiff.

Plaintiff and Collins have not pursued or engaged in inequitable conduct of business.

There were no false or fraudulent declarations or representations made in any of the applications for registration of the trade marks or the service marks here in suit.

■ Defendant contends that plaintiff and Collins have been guilty of laches in waiting two years to bring suit after defendants denied infringement. The letter of August 7, 1951 did not constitute on behalf of defendants or either of them, an invitation or demand on Collins to institute suit. The Association had taken its final position to proceed without regard to future actions of Collins or plaintiff and any acts thereafter taken by the Association and its member systems in respect of the promotion and use of the character Willie Wiredhand were in furtherance of that final position and were not dependent on the future actions of Collins or the plaintiff. Plaintiff has not been guilty of laches.

Plaintiff did not at any time abandon, forfeit or dedicate the character Reddy Kilowatt.

Defendants claim that the complaint should be dismissed because the plaintiff failed to comply with an order of the

862

court in a discovery proceeding. I see no merit in this point either in fact or law.

There is and was no actual intent on the part of defendants to unfairly compete, and there is no proof that unfair competition has been or is the natural and probable consequences of the acts of defendants.

### Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter of this complaint and counterclaim.

2. The character Reddy Kilowatt is plaintiff's trade mark and service mark and plaintiff is entitled to the exclusive use thereof.

3. Plaintiff's trade mark registrations and the service mark registration here in issue are good and valid registrations.

4. Defendants have not infringed any of the registered trade marks and service marks as charged in the complaint, and are not guilty of unfair competition as charged in the complaint. Accordingly plaintiff is not entitled to an injunction against either of the defendants for any actions charged in the complaint.

5. Plaintiff is not entitled to the exclusive use in advertising and promoting the sale of electric light and power and in public relations work with respect to electric service of fanciful, animated, humanized, personalized characters symbolizing or suggesting electricity. Plaintiff has no monopoly on such a system of doing business. However, defendants are not permitted to use any symbol that is confusingly similar to plaintiff's character Reddy Kilowatt.

6. Defendant Association is not entitled to recover any damages on its counterclaim under Section 38 of the Trademark Act of 1946, 15 U.S.C.A. § 1120, and such counterclaim must be dismissed.

7. Defendant Association is entitled to receive from the United States Patent Office the trade mark and service mark registrations for which it has made application, and the oppositions of plaintiff should be dismissed because plaintiff has failed to prove that it would be damaged by the grant of such registration.

8. At the trial many objections were taken to the admissibility of evidence. In its decision on both the law and the facts, the court has considered only such evidence as it deemed to be relevant, material, competent and proper.

A decree in accordance with the views herein expressed will be entered.