**REDDY KILOWATT, Inc., Appellant,**

v.

**MID–CAROLINA ELECTRIC COOPERATIVE, Inc., and National Rural Electric Cooperative Association, Inc., Appellees.**

No. 7290.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1956.

Decided Jan. 7, 1957.

Wallace H. Martin, New York City (Carlisle Roberts, W. Croft Jennings, Roberts, Jennings, Thomas & Lumpkin, Columbia, S. C., and W. D. Keith, New York City, on the brief), for appellant.

C. Willard Hayes, Washington, D. C. (David W. Robinson, Columbia, S. C., Marion B. Holman, Batesburg, S. C., William M. Cushman, George T. Mobille, Washington, D. C., Robert D. Tisinger, Carrollton, Ga., and James F. Dreher, Columbia, S. C., on the brief), for appellees.

Before SOPER and SOBELOFF, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This suit was brought to secure an injunction against the infringement of the trademark or service mark "Reddy Kilowatt", owned by Reddy Kilowatt, Inc., a Delaware corporation, which was plaintiff in the District Court. The mark is licensed to private electric light and power companies, which use it as a symbol to promote the consumption of electricity. The mark consists of an animated, humanized and fantastic cartoon or figure composed of a body and limbs of jagged lines simulating lightning, a rounded head with a light bulb for a nose and plug-in sockets for ears. It is portrayed in innumerable poses and activities.

The defendants are the National Rural Electric Cooperative Association, a District of Columbia Corporation, which is interested in the development of rural electrification in the United States, and the Mid-Carolina Electric Cooperative, Inc., a rural electric cooperative organized and operated under the State Electric Cooperative Act of South Carolina. The Association is the owner of a trademark or service mark consisting of an animated and fanciful character called "Willie Wiredhand"

which is alleged to infringe the plaintiff's mark. It was purposely designed to publicize the rural electrification program and is generally used by electric cooperatives including the defendants, Mid-Carolina, to promote their business activities. The figure portrays a little man whose hips and legs are represented by an electric wall plug, the body by an electric wire and the head by a socket with a push button for a nose.

The two characters displayed in their simplest form are shown in the accompanying cuts. Thus shown, they are unquestionably of the same general class and are suggestive of one another, but they are easily distinguishable, and in this form infringement is not claimed. The gist of the accusation is that many postures and situations in which the trademark "Reddy Kilowatt" is used by the plaintiff and its licensees are so closely imitated by the defendants in the portrayal of their mark that the public is confused and infringement occurs. This is the principal issue discussed in the briefs on this appeal. The District Judge who heard voluminous testimony on the point found against the plaintiff and dismissed the suit.

In its discussion of the facts, the plaintiff dwells upon the priority of its mark, the similarity of the fields in which the two marks are used, the similarity of the purposes for which they are employed, and the similarity of many of the poses and situations in which they are depicted—all of these circumstances, it is said, contribute to create confusion in the public mind. The character "Reddy Kilowatt" was devised in 1926 by Ashton B. Collins as a trademark to be used in the business of the Alabama Power Company with which he was then associated. Subsequently he severed his connection with the company and it took a license from him for the continued use of the mark. The present business of the plaintiff developed from these activities and the mark is now owned and used by the plaintiff corporation, which Collins controls. The business now consists of furnishing to privately owned public utilities (electric light and power companies) advertising material on which the trademark is displayed and licensing the utilities to make use of the mark in advertising their business. At the time of the trial there were 222 licensees, of which 188 were domestic companies operating in almost every state of the Union. These licensees use the mark to identify their products in carrying on their distribution services and public relations programs in their respective territories. The licensees address their promotional material to the general public and it is in this field that the plaintiff claims that confusion is created by the use of the accused mark.

Reddy Kilowatt    Willie Wiredhand

In their use of the material the licensees have been subject to a certain measure of control by the plaintiff whereby the licensing privilege has been granted only to privately owned public utilities with the right reserved to the owner of the mark to inspect the program and material on which the trademark is used, as well as the right to terminate the license by giving 90 days' written notice at the end of the year. The plaintiff, however, does not control the licensees in the operation of their business.

The plaintiff's main objection is to the later invasion of this field by the Cooperative Association and its affiliates. The Association was formed in 1942 and now includes 92% of the rural electric cooperatives in the country. Part of the business of the Association has been the preparation of public relations material and programs for its members. Prior to 1950 it did not use a symbolic character but in that year it began the use of the mark "Willie Wiredhand". The mark is used by the cooperatives to identify their services just as "Reddy Kilowatt" is used by the licensees of the plaintiff and there is great similarity in the advertising matter used by both groups engaged in the distribution of electricity. Mat sheets depicting these characters in many poses are furnished to the users, both by the plaintiff and the defendants, as well as advertising programs and novelties bearing the respective characters. "Reddy Kilowatt" is displayed in the plaintiff's material in many different poses associated with the distribution of electricity and the use of electrical appliances, and "Willie Wiredhand" is used by the defendants for the same purposes in drawings which, in many instances, closely resemble the drawings which are used by the plaintiff's licensees. The possibility of confusion is increased by the fact that both marks are symbolic of electricity, both are humanized and animated and are engaged in doing the same things in substantially the same manner. The plaintiff produced considerable testimony which tended to show that persons who were well acquainted with the material on which its mark appeared were confused when shown samples of the defendants' mark on similar material, and believed that the character exhibited to them was "Reddy Kilowatt" when, in fact it was the accused mark.

Notwithstanding all of these circumstances, it does not follow that the plaintiff has made out a case. Its claims to an exclusive field are not entitled to the breadth which is implicit in its arguments. It must be kept in mind in the first place that the plaintiff was not the first to make use of a fantastic humanized figure for advertising purposes; nor was it indeed the first to use such a character in the field of electricity. The record contains many illustrations exhibited in the Court below where personalized figures were used in the industrial field for promotional purposes, some of them relating to the use of electricity for practical household purposes. On this particular point the District Judge made the following statement in his opinion, 142 F.Supp. 851, 854:

"Long prior to the adoption of Reddy Kilowatt by Collins, animated characters had been in common and widespread use as trade marks, and in advertising, promotion and public relations work for all kinds of products and services. Exhibits D-W; D-X; D-DD and D-EE are collections of such materials. Exhibit D-X is a collection of 258 registrations of animated characters granted by the U. S. Patent Office, illustrating the wide use of such characters as trade marks for a great variety of products and services. The fanciful, animated, humanized character made up from mechanical or electrical parts for use in advertising and promotional work did not originate with Collins. See Exhibit D-EE showing the following: Saturday Evening Post June 10, 1911, Hot Point, Miss Glad Iron and Miss Sad Iron, showing

an animated electric iron; Saturday Evening Post (1920) French Battery & Carbon Co., showing Mr. Ray-O-Lite in connection with batteries. This character has a badge made up of jagged lines to simulate lightning or electricity. Other animated characters are there shown.

"Prior to the date of Collins' first license agreement on January 2, 1934, other animated characters were used as shown in Exhibit D-EE, including Planters Mr. Peanut, Ingram's animated shaving cream jar and tube, Three Minute animated oat kernels and animated characters by Arkansas Power & Light Company, named 'The Kilo-Watts'. Other advertisements showing animated characters used concurrently in advertising with Reddy Kilowatt include an animated telephone of the Bell System (1950); animated character, Mr. Plug-In (1942); an animated fluorescent light tube, and an animated electrical figure, Katie Kord. Items 68–73 of Exhibit D-D, all published in the nineteenth century show, respectively, an animated oil bottle, animated green peas and radishes, an animated insecticide bottle and hats and flatirons. Item 74 shows an animated ear of corn published in 1909 and Item 75 shows a gas light and an electric light in animated form named, respectively, 'Miss Cubic Foot' and 'Miss Kilo Watt', published in 1916. Exhibit D-RR is a group of magazines published by American Waterworks Association showing the use of an animated drop of water. It is humanized and is delivering messages and performing functions of the public water supply service in much the same way that plaintiff's character has been used to personalize electric service. The character is known as 'Willing Water'. The use of such characters for such purpose was in the public domain and plaintiff has no exclusive right to the use of animated characters in the electrical field."

This prior use by others of animated characters in advertising goods and services of course did not prevent the plaintiff from entering the field with an original design of its own. Nevertheless, the widespread use of this device has a direct bearing on the charge that members of the public are likely to be confused when "Willie Wiredhand" is displayed in a pose or dress or activity in which "Reddy Kilowatt" may also be seen. Whatever property the plaintiff has resides in the figure itself, which it has created, and not in the apparel or activity in which the plaintiff sees fit to place it. The plaintiff has no monopoly on the thousands of situations which it has chosen to depict, for otherwise no other personalized figure in the electrical field would have any validity. In the past thirty years "Reddy Kilowatt" has appeared in a thousand guises, which seem to include almost every imaginable activity, from none of which "Willie Wiredhand" may lawfully be excluded; and the resulting confusion, if any there be, is not caused by the similarity of names or of the bare figures alone but by the similarity of the situations to which the plaintiff has no exclusive right. On this phase of the case District Judge Harry E. Watkins made the following striking statement, 142 F.Supp. 851, 857:

"The only similarity in the illustrations results from pose, costume or action, but this similarity is understandable in view of the fact that both characters are promoting and advertising electric service and are used in public relations work in the business of distributing electric power. The similarity of certain selected poses is also explained by the fact that Reddy Kilowatt has appeared in thousands of poses doing almost everything humanly possible and in every conceivable activity. Most any pose in which a cartoonist

would draw Willie Wiredhand in advertising and public relations work relating to distribution of electricity would be somewhat similar to one of the several thousand poses in which Reddy Kilowatt has appeared. So far as poses in the electrical field are concerned, Reddy Kilowatt has about preempted the entire field. It is not surprising that some of the poses or dress of Willie Wiredhand would be similar to that of Reddy Kilowatt. One artist drawing Reddy Kilowatt and the other Willie Wiredhand, in isolated rooms, showing the symbol of electricity, showing, in general, public relations, celebrating holidays, doing things such as carrying signs, beating drums, doing the things that are fairly common in the cartoon trade to get across a message, are likely to come up with a number of similar positions or poses. For example, there are drawings of the characters dressed in kilts and other drawings with the character wearing the graduating cap. In the field of cartoons, the Scot is fairly common as a symbol for thrift or economy, and during the commencement season the cap and gown are likewise common in such drawings. There was no intent on the part of the defendants or their representatives, including the artist, McLay, to copy any Reddy Kilowatt poses. He did not secure his ideas or inspiration from Reddy Kilowatt and did not have access to the mats of plaintiff prior to drawing the Willie Wiredhand poses. The similarity of poses has resulted from the fact that the parties are using an animated cartoon-like character in advertising, promotional and public relations work, in substantially the same way, which the defendants have a right to do. Any similarity in general appearance in these selected illustrations resulted as a matter of coincidence. The various isolated comparisons do not indicate a likelihood of confusion or establish unfair competition. There is no substantial similarity in the two characters."

The established rule that new and valuable ideas developed in the prosecution of a business do not ordinarily become the exclusive property of the originator is well stated in Nims, Unfair Competition and Trademarks, 4th Edition, Vol. 2, § 289, page 947, as follows:

"* * * Generally speaking, there is no protection for new commercial ideas or methods although they may be original and valuable unless they are kept secret or are divulged only by a contract which binds the one to whom they are disclosed to pay for their use if they are adopted. It is not unfair competition to obtain knowledge of or to use a competitor's ideas or methods if such knowledge is obtained in a bona fide way, and such use is fair."

See also Perris v. Hexamer, 99 U.S. 674, 25 L.Ed. 308; Reynolds & Reynolds Co. v. Norick, 10 Cir., 114 F.2d 278; Kaeser & Blair, Inc., v. Merchants' Ass'n, 6 Cir., 64 F.2d 575; Affiliated Enterprises, Inc., v. Gantz, 10 Cir., 86 F.2d 597.

It is equally true that a person cannot appropriate to his exclusive use all characters or symbols suggestive of a particular activity for, as was said in Canal Co. v. Clark, 13 Wall. 311, 324, 20 L.Ed. 581, "[one] has no right to appropriate a sign or a symbol, which, from the nature of the fact that it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." See also Judson Dunaway Corporation v. Hygienic Products Co., 1 Cir., 178 F.2d 461; Sargent & Co. v. Welco Feed Mfg. Co., Inc., 8 Cir., 195 F.2d 929; Official Aviation Guide Co., Inc. v. American Aviation Associates, Inc., 7 Cir., 150 F.2d 173. When these rules are applied

to the circumstances of the pending case it becomes apparent that even if the poses and attitudes of "Willie Wiredhand" used by the defendants in their advertising material are strikingly similar to those used by the plaintiff in displaying "Reddy Kilowatt", the plaintiff has no just cause to complain, for it has no right to appropriate as its exclusive property all the situations in which figures may be used to illustrate the manifold uses of electricity.

It should be borne in mind that we are not dealing in this instance with an attempt on the part of an infringer to simulate not only the precise trademark of another, but also to imitate the manner in which the trademark is usually employed as, for instance, imitating the color or size of the package in which the goods are contained in connection with which the trademark is ordinarily employed. As we have pointed out above, the plaintiff's mark in the pending case is not used in any standardized form but in a great variety of situations; and it is the portrayal by the defendants of the same situations, to which the plaintiff has no exclusive right, which leads to the confusion of which it complains. Cf. Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73; Scriven v. North, 4 Cir., 134 F. 366, 372.

It is well to add that there is no such competition between the two marks in this case as is usually found in controversies involving the use of similar figures to publicize the merits of competing articles of merchandise or services. "Reddy Kilowatt" is used for two purposes: (1) as a trademark or service mark to denote the origin of the promotion material supplied to public utilities by the plaintiff and (2) as a trademark or service mark to denote the origin of the product or service supplied by the public utility companies to the public. In neither respect does the mark encounter substantial competition with the defendants' mark. "Reddy Kilowatt" material is distributed only to public utilities, while "Willie Wiredhand" material is distributed only to cooperatives. There is no instance in which the user of one service has endeavored to substitute the other. Similarly, there is no substantial competition between the suppliers of electricity that use one mark with the suppliers of electricity that use the other. This feature of the business is accurately described in the following excerpt from the District Judge's opinion: 142 F.Supp. 851, 859.

"* * * The areas in which cooperatives may extend their lines are limited by Act of Congress under which they receive their loans and by state laws. Cooperatives are only permitted to serve customers who cannot get electric power from a private utility. There is also an economic limitation as the cooperatives which buy power from privately owned companies cannot extend their lines into areas which private power companies want to serve.

"It has happened that when a power load grows up in the area served by a cooperative, the private power company will extend its lines to take over that load. This means the loss of the better customers of a cooperative to a private company and is called pirating by the cooperative officials. There is no evidence of a cooperative having taken customers from a private utility. In cases where a new house is built in a fringe area, between the areas served by a cooperative and a private utility, the factors which will determine who shall serve them are (1) the price differential and (2) whether or not the cooperative is purchasing its power from the power company. There is little or no competition for customers between the cooperatives and the licensees of plaintiff, even in the so-called fringe areas. Each has its particular area. The members of the public buy their electric

power from the only source available."

One result of this situation, which is rare in trademark litigation, is that the plaintiff makes no claim that it has suffered any damage from the public use of the defendants' mark but expressly disclaims any right to damages in the pending case. The situation also gives rise to the defendants' contention that "Reddy Kilowatt" lacks validity as a trademark or service mark to indicate the products or services of a particular public utility. A trademark cannot be licensed by the mere granting of permission to use it—in fact, it has no legal existence apart from its function to indicate the origin of goods or services and hence it cannot be transferred apart from the business itself. See Nims, Unfair Competition and Trademarks, 4th Edition, Vol. 1, § 22, page 122. This rule is qualified to some extent by the provisions of the federal statute on trademarks. It is provided in § 45 of the Trademark Act of 1946, 15 U.S.C.A. § 1127, that a trademark includes any word, name, symbol or device used by a manufacturer or merchant to identify his goods, and that a service mark means a mark used in the sale or advertising of services to identify the services of one person; but it is also provided by § 1055 that where a registered mark is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant; and a related company is defined by § 1127 to mean any person who legitimately controls or is controlled by the registrant in respect to the nature and quality of the goods or services in connection with which the mark is used. The plaintiff relies on these provisions to establish the validity of its licensing system; but it is noteworthy that, although the plaintiff exercises some control of the use of the "Reddy Kilowatt" promotional material by its licensees, it does not claim that it has any control over the products or services rendered by the public utility companies to the consuming public. On this account the defendant argues that the mark has no validity as used by the public utility companies; but we need not decide this issue in view of the conclusion that we have reached —that there has been no infringement.

Affirmed.